## LEWYT CORPORATION v. HEALTH-MOR, Inc., et al.

### No. 9924.

United States Court of Appeals
Seventh Circuit.

May 4, 1950.

Rehearing Denied June 3, 1950.

Max W. Zabel, Benton Baker, Robert L. Kahn, Chicago, Ill., for appellants.

Carlton Hill, Chicago, Ill., David S. Kane, New York City, The Firm of Charles W. Hills, Chicago, Ill., Duell & Kane, New York City, for appellee.

Before KERNER, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Defendants appeal from a judgment entered in a declaratory judgment action instituted by plaintiff, which sought an adjudication of invalidity of Yonkers Patent No. 2,198,568 and Martinet Patent Nos. 2,280,495 and 2,296,359, all of which relate to electrically operated suction or vacuum cleaners. The complaint also charged

Health-Mor, the exclusive licensee of Yonkers, and Yonkers with unfair competition. Defendants answered and filed counterclaims charging plaintiff with infringement of claims 2, 4, 7 and 8 of the Yonkers patent and with unfair competition. The portion of the complaint charging unfair competition having been dismissed, the District Court entered judgment dismissing the counterclaims and adjudging claims 2, 4, 7 and 8 of the Yonkers patent and claims 1 and 2 of Martinet Patent No. 2,280,495 invalid and not infringed. Defendants appeal from so much of the judgment as dismissed defendants' first counterclaim and declared invalid and not infringed the disputed claims of the Yonkers patent.

Yonkers discloses and describes a canister type suction cleaner, designed to eliminate the disadvantages inherent in the earlier stick and tank type cleaners, both of which employed a cloth bag into which dirt-laden air was drawn by means of a suction fan, the porous bag acting as a filter through which only the air could pass and as a receptacle for the dirt which remained within it. His object was to build a cleaner which would function more efficiently than the older devices, whose operating efficiency was decreased by the fact that the pores of the cloth bag tended to become clogged with dirt and dust particles, and, which, at the same time, would eliminate the disagreeable task of periodically emptying and cleaning the bag employed in old cleaners. To accomplish this, he prescribed a conical paper filter, held in place by a perforated metal support; to protect the paper filter, from destruction by the dirt particles which are drawn into the canister, he provided a tangential introduction of the dirt-laden air into the canister, thus creating a centrifugal force which keeps the heavier dirt particles well away from the filter and maintains the latter in a relatively clean condition. His structure is described in the language of the claims in issue, which read as follows:

"2. In a suction cleaner, a housing having a dust compartment in the bottom thereof, a generally conical air filter forming the top cover of said compartment with the apex of the cone extending inwardly toward the bottom of said compartment, said filter comprising a perforated supporting member and a flexible filtering member against said supporting member, an intake connection into said dust compartment below said filter, said intake connection terminating in a nozzle for discharging dirt-laden air adjacent to and parallel with the filter surface and an exhaust connection above said filter.

"4. In a suction cleaner, a housing having a dust compartment in the bottom thereof, a generally conical fragile filter forming a cover for at least part of said compartment and extending down therein, a perforated member above said filter for supporting and maintaining said filter against collapse, means for generating a suction above said filter, an air intake for said housing below said filter, and means for guiding the incoming dirt-laden air so that the air takes a generally circular path generally parallel to the filter surface and adjacent thereto.

"7. In a suction cleaner, a housing having a dust compartment in the bottom thereof, at least a portion of the sidewall of which housing compartment is cylindrical in form, a generally conical fragile filter forming a cover for the cylindrical portion of said compartment and extending down therein in coaxial relation therewith, a perforated member above said filter for supporting and maintaining said filter against collapse, means for generating a suction above said filter, an air intake for said housing below said filter, and means for guiding the incoming dirt-laden air so that the air takes a generally circular path generally parallel to the cylindrically coaxially housed filter and adjacent thereto.

"8. In a suction cleaner, the combination of an opentopped cylindrical dust receptacle having an annular portion adapted to receive and support a filter element, a generally conical flexible filter element marginally supported upon said annular receptacle portion against downward movement, and a removable group constituting a cover for said compartment and a retainer for holding said filter in said recited association with said dust compart-

ment, said group including a motor-driven suction-generating means and a perforated generally conical filter support bearing upon the receptacle-supported marginal portion of said filter element, complementarily fitted within the filter element proper and bracing same against collapse under differential air pressure induced by said suction-generating means." [84 F.Supp. 189, 192.]

The District Court, in its opinion, criticized Yonkers for failing to state in his claims (with the exception of claim 8) whether it was the combination itself or merely one element thereof which constituted invention, and indicated that "claims 2, 4 and 7 might well be held invalid, * * for the failure of Yonkers to specify just what it was that he was claiming." However, it appears that the judgment of invalidity rested not upon this thought but upon the court's conviction that certain prior art patents (Upton Patent No. 1,789,-203; Korittke Patent No. 1,921,085; Kirby Patent No. 1,100,575) anticipated Yonkers, for it stated: "In my opinion each of the features for which Yonkers claims invention is old. Any one having in mind the designing of a vacuum cleaner and looking over the prior art would find each of the elements of the Yonkers patent, and the combination of them to produce the Yonkers cleaner did not constitute invention." Moreover, the findings as to both invalidity and infringement are predicated on the prior art patents to Upton, Korittke, and Kirby.

Defendants contend that the District Court misconceived the true character of the Yonkers cleaner, which, they maintain, is a novel combination of elements producing a novel result and substantially advancing the art, and that the court applied an impossible standard of invention when it dissected the Yonkers combination, matched its elements against similar elements in the very same prior art patents over which the Patent Office had allowed the claims, and erroneously concluded that the combination was not patentable. They insist that the prior art patents, whether considered separately or collectively, fail to disclose or suggest the Yonkers cleaner, and they urge that the trial court's decision that the Yonkers combination is unpatentable is clearly erroneous. They assert also that the District Court gave no heed to the usual presumption of validity, which, they argue, is enhanced in this case by the fact that the Patent Office, after a consideration of all the prior art patents relied on by plaintiff, allowed the claims which the court declared invalid. Lewyt, however, maintains that the District Court correctly decided that the Yonkers claims do not achieve invention; moreover, Lewyt contends that should the claims be deemed valid, they cannot, in view of the prior art patents to Kirby and Korittke, be construed to cover the Lewyt cleaner.

 Defendants, of course, correctly assert that there is a presumption that a patent is valid and that this presumption is strengthened in a case where, as here, the prior art relied upon to invalidate the patent was considered and rejected by the patent office. Radio Corp. of America v. Radio Engineering Laboratories, 293 U.S. 1, 7, 55 S.Ct. 928, 79 L.Ed. 163; Copeman Laboratories Co. v. General Plastics Corp., 7 Cir., 149 F.2d 962, 964. Even so, the issuance of the patent was not at all conclusive of the ultimate issue before the District Court—i. e., whether the device met the requirements of the governing statute. 35 U.S.C.A. § 31. In resolving that issue, the District Court found that the Yonkers patent was invalid because of existing prior art patents. However, it is to be observed that the finding of anticipation is, in this case, no more conclusive upon this court than was the issuance of the patent upon the District Court, for it was made on the basis of documentary evidence which is now before this court and which this court is free to interpret for itself in determining whether the finding is correct. Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794, certiorari denied 1950, 70 S.Ct. 575.

 Though the District Court may have correctly found that each of the elements in the Yonkers cleaner was old, it

858

does not follow that Yonkers' combination was ipso facto unpatentable, for a novel combination of old elements which so cooperate as to produce a new and useful result or a substantial increase in efficiency is patentable. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 434, 31 S.Ct. 444, 55 L.Ed. 527; Outboard Marine & Mfg. Co. v. Muncie Gear Works, Inc., 7 Cir., 119 F.2d 404, 407. In this case then, even though the use of a replaceable paper filter, or a conically shaped filter, or an air intake which set up a centrifugal force was not new, still it seems to us that there was patentable novelty in Yonkers' combination of these elements. This novelty lay in the *form of and cooperation between* the air intake and the replaceable conical paper filter, which operate together to produce a combined result not disclosed or suggested in any of the prior art patents. That the result achieved is both useful and desirable is evinced by the machine's commercial success, attributable, obviously, to the fact that it eliminates inconveniences and disadvantages inherent in the older cleaners.

▌ A careful examination of the prior art patents confirms our conclusion that the Yonkers combination is novel and patentable. Kirby's patent discloses an air intake which operates to produce a circular air flow within the cleaner, but the filter he employs, an unsupported fabric bag subject to being drawn up against the motor and vacuum pump housings, is not at all like the firmly supported conical paper filter employed by Yonkers and fails utterly to accomplish Yonkers' efficiency. Korittke shows a filter in the shape of a truncated cone, but it includes nothing like Yonkers' disposable paper filter but suggests merely a pair of fabric bags which were not designed as a replaceable filter element. Moreover, it seems clear that if a paper filter were employed in the Korittke cleaner, it would be quickly destroyed by blasts of dirt-laden air, for Korittke provides an air intake which forces the dirt-laden air directly against the bottom portion of the filter. Finally, Alpton's flat paper filter not only has a con-

siderably smaller effective cleansing area than does Yonkers' full cone filter, but it also would undoubtedly be destroyed in a relatively short time by dirt and dust particles striking against it, for its air intake is not so arranged as to protect the filter from contact with the heavier dirt particles.

Lewyt contends that, although no single prior art patent discloses the structure or mode of operation of the Yonkers cleaner, the latter is not a true combination but nothing more than a mere aggregation of old elements. The District Court agreed, stating that "Any one having in mind the designing of a vacuum cleaner and looking over the prior art would find each of the elements of the Yonkers patent, and the combination of them to produce the Yonkers cleaner did not constitute invention." However, as the Supreme Court pointed out in Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 447, 55 L.Ed. 527, "Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention." Our language in National Slug Rejectors v. A.B.T. Mfg. Corp., 7 Cir., 164 F.2d 333, 338, is singularly appropriate in connection with Lewyt's contention that Yonkers is merely an aggregation of the elements of Kirby, Korittke, and Upton, for it is true here, as it was in that case, that "Even when we take all of the elements of the three patents * * * and select elements from each and put them together as they never have been put together before, we still do not have the * * *. combination * * *."

The District Court, in addition to adjudging invalid claims 2, 4, 7 and 8 of the Yonkers patent, also concluded that those claims were not infringed by Lewyt. This conclusion was apparently based on the court's findings that "Plaintiff employs two conical filter bags the same as Korittke,"

and that "Neither plaintiff nor defendant Health-Mor, Inc. employs the particular form of nozzle shown in the Yonkers patent No. 2,198,568" but "Both * * * use an opening from the hose into the pan or pail so shaped as to impart a whirling rotary motion to the air." In addition, the court found that "The demonstration in open court of plaintiff's machine showed the dust laden air revolving around the outer surface of the pan and not close to the surface of the filter so as to clean it."

Defendants contend that the finding that plaintiff employs two conical filter bags the same as Korittke is obviously erroneous, and that it does not follow from the finding that the air intake employed by plaintiff is not of the particular form shown in the Yonkers patent that plaintiff's cleaner does not infringe, the reason being that Yonkers' claims are not limited to the particular form of nozzle shown in Fig. 2 of the patent. Moreover, defendants assert that the finding that, in both Lewyt and Health-Mor, it is the shape of the opening which imparts the whirling rotary motion to the air is contrary to reason; they insist that such motion results not from the shape of the nozzle but from a combination of the form of the air intake, the cylindrical surface of the container, and the conical surface of the filter. Finally, they insist that the finding relative to the demonstration of plaintiff's machine is contrary to the evidence and to common knowledge.

Lewyt rightly contends that infringement cannot be shown by a comparison of the two cleaners, but that it must rest upon a showing that the Lewyt cleaner reads on the Yonkers patent. Such a showing, plaintiff says, has not been made and cannot be made in this case in view of the fact that Yonkers' claims are limited to a special nozzle and a special filter support, neither of which is employed in the Lewyt cleaner. The District Court agreed that the Yonkers claims were limited to a special shaped *flat* nozzle and a perforated *metal* support for the conical paper filter. The claims, however, fail to disclose any such limitation. The air intake is various-

ly described as "a nozzle for discharging dirt-laden air adjacent to and parallel with the filter surface" (Claim 2), a "means for guiding the incoming dirt-laden air so that the air takes a generally circular path generally parallel to the filter surface and adjacent thereto" (Claim 4), and a "means for guiding the incoming dirt-laden air so that the air takes a generally circular path generally parallel to the cylindrically coaxially housed filter surface and adjacent thereto" (Claim 7), while the filter support is described, in Claim 8, as "a perforated generally conical filter support." The question, then, is whether these claims are infringed, not whether Lewyt slavishly conforms to the drawings and specifications which accompany and illustrate them.

It is, as defendants assert, quite obvious that the shape of the air intake cannot, alone, impart a rotary motion to the air, but can do so only in combination with other elements. And that the baffle-type air intake used by Lewyt constitutes a "nozzle for discharging dirt-laden air" or a "means for guiding the incoming dirt-laden air", whose relationship to and function in combination with the cylindrical interior surface of the cleaner and the conical paper filter extending downward therein is precisely as described in the Yonkers claims, is, it seems to us, so clear as to defy contradiction. This, we believe, inevitably leads to the conclusion that the air intake used by Lewyt does not distinguish its cleaner from that disclosed by the Yonkers patent.

An examination of Lewyt's filter element, which consists of a conical paper filter into which is fitted a conical cloth filter, the cloth being stretched firmly and tightly over a skeletal metal framework resulting in a firm conical form support for the paper filter, is convincing that the finding that Lewyt "employs two conical bags the same as Korittke" is erroneous, for, as has been indicated, Korittke employed two fabric bags in the shape of a truncated or sawed off cone. The court may have meant to indicate that the result was the same in that both employ a double

filter element,[1] but, even if the finding is so construed, it does not alter the fact that the cloth cone, stretched tightly over a skeletal metal framework, is positioned just as is the "perforated generally conical filter support" in Yonkers and operates, just as does the Yonkers filter support, to hold the conical paper filter in place and to prevent it from collapsing. Yonkers does claim a "perforated" filter support, and his specifications indicate that he felt that a wire or metal screen would best suit his purpose, but it seems obvious that he used "perforated" to indicate that the element must be one through which air will pass and that, merely because Lewyt uses a cloth firmly stretched over a metal framework instead of a metal screen, it cannot be said that Yonkers does not read on Lewyt, for the resulting function is obviously the same.

There remains the finding relating to the demonstration of the Lewyt cleaner. The court found that this demonstration "showed the dust laden air revolving around the outer surface of the pan, and not close to the filter so as to clean it." This finding, the last five words excepted, confirms the fact that the plaintiff's cleaner functions in such a manner that "the main body of dirt is not sucked up against the filter surface," which was one of the stated objects of Yonkers. The finding, in its entirety, is indicative that another of the stated objects of Yonkers, "to devise a construction in which the filter tends to clean itself," is not realized by the Lewyt cleaner. However, it is difficult, to say the least, to reconcile such a finding with the fact that, after operation, the paper filter was relatively clean, covered with only a very fine coating of dust. One possible explanation is that, as the finding states, the *dust laden* air was revolving around the *outer surface* of the pan, not close to the surface of the filter, while, due to the centrifugal forces within the cleaner, the air revolving *near the surface* of the filter contained only *minute dust particles,* not visible to the naked eye. But, even if the finding is

taken to mean that no air revolves near the filter surface and that, consequently, the revolving air does not tend to clean the filter surface and the finding is accepted as an undoubted fact, still it does not seem to us that such a finding, standing alone, can support a judgment of noninfringement in this case.

The judgment of the District Court, insofar as it decreed invalid and not infringed claims 2, 4, 7 and 8 of the Yonkers patent, is reversed, with directions to proceed in accord with this decision.

---

1. This, however, would be a rather unrealistic conclusion, for the paper cone filter is a finer filter than the cloth fitted within it, so that a particle minute enough to pass through the former would certainly pass through the latter.