**ANDERSON COMPANY, Plaintiff-Appellee,**

v.

**SEARS, ROEBUCK AND CO., and Zaiger Corporation, Defendants-Appellants.**

No. 12459.

United States Court of Appeals
Seventh Circuit.

April 14, 1959.

Rehearing Denied May 28, 1959.

Howard T. Markey, Francis W. Parker, Jr., Parker & Carter, Chicago, Ill., John M. Fogarty, Lynn, Mass., for defendant-appellant, Zaiger Corp.

Frank H. Marks, Lederer, Livingston, Kahn & Adsit, Chicago, Ill., for defendant-appellant, Sears, Roebuck & Co.

James P. Hume, John Rex Allen, Chicago, Ill., Richard S. Melvin, Gary, Ind., James C. Wood, Lloyd W. Mason, Hofgren, Brady, Wegner, Allen & Stellman, Chicago, Ill., for plaintiff-appellee.

Before SCHNACKENBERG and HASTINGS, Circuit Judges, and WHAM, District Judge.

HASTINGS, Circuit Judge.

This is an action for patent infringement. Plaintiff-appellee, The Anderson Company, a corporation, sued Sears, Roebuck and Co., a corporation. The Zaiger Corporation, as manufacturer of the accused devices, submitted to the jurisdiction of the court as a co-defendant and defended the action. Both defendants are appellants herein.

The patent in suit relates to a windshield wiper and is No. 2,596,063 entitled "Windshield Wiper Linkage Assembly." It was issued May 6, 1952 to John W. Anderson, plaintiff's president, and, under subsequent assignments, is now owned by plaintiff. Plaintiff asserted claims 6, 8 and 12 of the thirty-one claims in its patent.

Defendants answered pleading the invalidity of the claims in suit because of an alleged prior public use by defendant Zaiger Corporation, because the patent was anticipated by certain prior patents and because the patent described a non-patentable aggregation. They pleaded further that the claims of the patent were broader than the invention

conceived by the patentee; that the plaintiff was guilty of laches; and that there was no infringement.

At the beginning of the trial defendants' counsel, after stating that "[w]e do assert as to all of the claims that they involve no invention over the prior patented art," subsequently conceded that the accused devices would infringe the claims in suit if such claims were valid.

A major portion of the testimony was devoted to the defense of prior public use by Zaiger and plaintiff's efforts to show that defendant Zaiger's wiper device submitted in evidence to show such prior public use (defendants' exhibit D–15) had not been made as testified to by its maker. From this evidence the trial court found that defendants' exhibit D–15 was spurious and known to be such and that the defense of public use had not been established. Defendants have waived this issue on appeal.

The trial in the district court consumed thirteen full trial days; trial briefs were submitted; extended oral arguments were heard; proposed findings of fact and conclusions of law and a form of judgment were submitted by plaintiff's counsel, as well as defendants' written objections thereto; oral arguments on such proposals and objections were heard; and the trial court then signed and entered 65 findings of fact and 14 conclusions of law on the issues raised by the complaint favorable to plaintiff and rendered judgment thereon. Defendants did not file any subsequent motion asking the court to amend its findings or to make additional findings, and they stand as originally entered.

The trial court held, inter alia, that claims 6, 8 and 12 of the Anderson patent were valid and infringed, and permanently enjoined defendants from making, using or selling the accused device and any similar device constituting infringement of these claims. There was a further finding that defendants' infringement of the patent was "wilful and wanton." Plaintiff was awarded damages, attorneys' fees and costs, and the cause was ordered referred to a master for determination of the amount of plaintiff's damages after the judgment has become final.

Defendants have limited this appeal to the sole question of whether or not the patent in suit is invalid under 35 U.S. C.A. § 103 [1] because of lack of invention over the disclosures in the prior art, and particularly over the disclosures of two of the several patents set out in their answer.

The errors relied upon arise out of defendants' contentions that the district court adopted erroneous findings and conclusions not supported by or contrary to the evidence and applicable law and its failure to make other necessary findings supported by the evidence and law. Defendants further contend that the trial court failed to apply the correct criteria of patentable invention and ignored or disregarded the applicable rule of law relating to the patentability of a combination of old elements.

Although the record contains a transcript of approximately 2200 pages and numerous exhibits, we may say for the benefit of the parties that, in arriving at our determination of this case, we have given careful and detailed consideration to the whole record.

The history of this patent is marked with contention and litigation. Anderson conceived the invention of the patent in suit in 1944 and filed his application on December 13, 1945. While the application was pending in the Patent Office in 1947 it was involved in a contested interference with an application for a patent owned by Trico Products Corporation. Anderson was awarded priority of invention by the Patent Office

1. That section provides: "A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *"

Interference Examiner, and the award was affirmed by the Patent Office Board of Appeals and the Court of Customs and Patent Appeals. See Scinta v. Anderson, 1951, 193 F.2d 1020, 39 CCPA 790.

During the pendency of the application and the interference proceeding many of Anderson's claims were rejected by the Examiner both as originally filed and as amended. However, as the result of numerous amendments to the application, frequent conferences with the Examiner and what appears to have been a thorough consideration of the references to the prior art, and following the award of priority over the Trico application (which had been filed in the spring of 1947), the application was allowed (including claims already allowed in another case) and the Anderson patent was issued on May 6, 1952.

In 1953, in the United States District Court for the Western District of New York, plaintiff brought a suit for infringement of the instant patent against Trico Products Corporation, not a party here. The New York court held the Anderson patent valid over the prior art, including the two patents now relied upon by defendants here, but invalid by reason of the alleged Zaiger prior public use, a defense abandoned here. See Anderson Company v. Trico Products Corporation, D.C.W.D.N.Y.1958, 162 F. Supp. 224.

The patent in suit describes this invention as one that "relates generally to windshield or window cleaners or wiper devices and more particularly is directed to a device adapted to clean or wipe a curved surface as well as a substantially planar surface." Claim 6 is typical of the three claims asserted here and reads:

"6. A wiper for cleaning a curved surface, comprising an elongated blade flexible for conforming to the surface curvature, the blade having an elongated flexible backing strip, a primary yoke extending lengthwise of the strip and having an arm attaching portion, and secondary yokes, one secondary yoke connected intermediate at its ends to an end of the primary yoke and having its opposite ends connected to the backing strip at longitudinally spaced points, and another secondary yoke connected intermediate its ends to the opposite end of the primary yoke and having its opposite ends connected to the backing strip at longitudinally spaced points."

The problem of wiping a curved windshield was an old one before the invention of the patent in suit. A windshield wiper must completely remove all rain, snow, dirt and other extraneous matter in the path of its movement or obscure areas will result, handicapping the vision of the driver. Thus, the complete cleaning of the glass is essential. A windshield wiper moving over a curved glass windshield is required to change its shape constantly to conform to the wiped surface. The wiper must continually flex in order to conform to varying degrees of curvature, from curved to substantially straight and then to curved again, for each pass it makes over the windshield.

Anderson accomplished the desired result with a device containing a combination of three essential elements, viz.: (1) a flexible rubber wiping blade, (2) a flexible backing strip for the wiping blade, and (3) a multiple yoke pressure distributor. Since the rubber wiper and backer are flexible, the wiper blade flexes to follow the contour of a curved automobile windshield, the pressure of the wiper arm being distributed on the flexible wiper and backer by the pressure distributor. Each of the three claims in suit is drawn to a combination of these three elements.

Although defendants cited numerous patents in support of its defense that the claims in suit are lacking in invention over the disclosures in the prior art, it now limits its reliance to two of them, namely, Zierer, No. 2,254,343 and Linke-Hofman,[2] German Patent No. 689,330.

2. Sometimes referred to herein as Linke-Hoffmann and Linke-Hoffman.

The Zierer patent discloses a device intended to wipe a curved windshield showing a pre-curved blade. Its structure has a wiping element including a rubber blade and a backing portion of spring steel. It employs a movable cam mounted in a rigid holder and pressing upon the middle of the pre-curved back, and a pair of arms, one for moving the blade back and forth in its arc and the other for turning the cam to press on the back of the pre-curved blade to change its shape. The shape of the rubber blade is controlled by the cam whether the blade is in contact with the glass or not. The shape of the blade is pre-curved, and there is nothing to indicate that it can wipe any but the windshield with the curvature for which it was designed, and being pre-curved it could not conform to flat surfaces or surfaces with varying degrees of curvature. It has never gone into public use. Defendants urge that Zierer discloses as old in the art two of the elements in the Anderson patent,— the flexible rubber wiper and flexible backing strip for the wiper.

The Linke-Hofman German patent also discloses a device intended to wipe a windshield, including those with a curved shape. This shows a single rubber wiping strip triple-notched at the top to form four sections. To each of these four rubber sections is clamped a U-shaped rigid metal holder approximately the length of such section, the rubber section fitting up into the "U", the notches between each section in the rubber blade being cut so that the blade is hinged between the sections. The four rigid metal holders are pivotably mounted in or connected to a pair of larger channel or U-shaped yokes, each extending approximately the length of two of the smaller holders. The larger yokes are in turn pivotably mounted in or connected to a single primary yoke extending over the entire length of the blade. It thus has a triple-yoke intended to distribute pressure on the blade toward and away from the windshield. Each of the four sections can be tangent only to a curved surface. Defendants contend that Linke-Hofman discloses as old in the art the remaining essential element in the Anderson patent,—a triple yoke pressure distributor with the flexible rubber blade. Linke-Hofman has never gone into public use.

It is interesting at this point to note the comment of District Judge Morgan on Linke-Hofman in the New York case, Anderson Company v. Trico Products Corporation, D.C.W.D.N.Y.1958, 162 F. Supp. 224, 230–231:

"* * * The device [Linke-Hofman] is also cumbersome and heavy and apparently not economically suited to commercial production. Of all of the general prior art cited by defendant, Linke-Hoffmann comes closest to anticipating the patent in suit. It employs a form of triple-yoke structure akin to Anderson's. But Linke-Hoffmann lacks a flexible backing strip, slidably connected to secondary yokes, with primary and secondary yokes slidably movable in relation to each other. Even if the foregoing were not so, it is obvious that Linke-Hoffmann does not possess the unique combination of elements found in the patent in suit. It simply shows that some of those elements are old in the art. This would even be so under the doctrine of equivalents, since Linke-Hoffmann does not operate in a manner equivalent to that of the patent in suit. Linke-Hoffmann does not read on the patent in suit, as was decided by the Patent Office when it cited Linke-Hoffmann as a reference in issuing the patent.

"In summary, * * * the most that the prior art cited by defendant discloses is that the elements of which the patent in suit is composed are largely old in the art. * * * But in no instance does the prior art disclose the unique combination of the elements found in the patent in suit."

Defendants argue that Anderson merely claims a combination of Linke-Hofman's pressure distributor with Zierer's flexible backer and rubber wiper blade;

that Anderson did not invent any of these elements which were old in the art when the combination was made and each of which performed in the prior art devices precisely the function now claimed for it in Anderson's claims; that the result achieved by Anderson's combination is the same result achieved by such combination of Linke-Hofman and Zierer; that Anderson's combination was an obvious expedient reflecting the work of a mechanic skilled in the art; and that this was not patentable invention.

However, each of the claims in suit calls for a structure having as an element thereof an elongated flexible blade which is expressly required to have the function of conforming to the surface curvature of the glass to be cleaned. Claim 6 requires an "elongated blade flexible for conforming to the surface curvature." Claim 8 requires an elongated blade "resiliently flexible for conforming to a surface to be cleaned." Claim 12 requires a wiper blade "freely resiliently flexible throughout substantially its length in a single plane to easily conform to the contour of a surface to be cleaned." We agree with the trial court that this element is not found in the prior art patents.

The trial court in its Finding No. 12 found explicitly that the "prior art fails to disclose the invention in suit." In Finding No. 14, it stated in part that "[t]here is no flexible backing member for the rubber in the Linke-Hoffman structure. The Court witnessed a demonstration of a model of Linke-Hoffman and observed that the structure cannot wipe a curved glass satisfactorily." In Finding No. 15, with reference to the Zierer structure, the trial court found that "[i]ts structure includes a rigid holder having a pin at each end passing through the rubber of the blade; a precurved flat metal back secured to the rubber; a cam mounted in the back of the rigid holder and pressing upon the middle of the pre-curved back; * * *. The shape of the Zierer blade is chosen in advance according to a pre-arranged program, it cannot wipe any but the curved windshield for which the cam is designed

and has the disadvantage of being pre-curved and hence cannot wipe that glass successfully."

In Finding No. 3, the trial court stated that the patent in suit "discloses and claims a unique combination of mechanical elements resulting in a windshield wiper which is the only wiper developed to date which can wipe curved windshields successfully and which wipes all windshields whether curved, flat or irregular, better than the prior art." This finding then described the three basic elements of the combination and their functions.

In Finding No. 4, the trial court indicated that the structural combination in Anderson's patent "provides for the first time a wiper which in operation conforms to all surface irregularities and curvature which may occur in parts of a windshield glass intended to be wiped. The combination of the pressure distributing assembly and the flexible, resilient backing for the rubber maintains all parts of the rubber wiping edge urged toward the glass at all times. This performance of a windshield wiper structure was new and different from any known before the application for the patent in suit was filed."

The trial court also noted the commercial success of the plaintiff's wiper as lending force to its findings of validity. In Finding No. 5, the trial court states: "The commercial success of the plaintiff's blade has been extraordinary. * * * Within a year of the appearance of the Anderson blade on the market Trico copied it and a year later Zaiger did likewise." And in Finding No. 7, it added: "The record indicates that this commercial success was due to the inherent qualities resulting from the invention of the patent in suit, * * * and that later developments and improvements by plaintiff were of minor importance in the commercial success of the blade." Further, in Finding No. 8, on the issue of commercial success, it pointed out: "[T]hat not a single one of the prior art patents for wiping curved windshields alleged to anticipate the invention has ever gone into

commercial use. Furthermore, many of these patents are owned by the very companies making or using plaintiff's patented windshield wipers or copies thereof."

Subsequent findings treat with other patents cited in the prior art and we are not concerned with them here. Likewise, Findings Nos. 17 through 65 are concerned with the facts relating to the issue of prior use and we need not review them.

Defendants vigorously challenge the correctness of these several findings and charge that they are erroneous as being not supported by or contrary to the evidence. They contend that the commercial success of the plaintiff's commercial device is due to subsequent improvements made by Anderson embodying structural elements not in the claims in suit. We have carefully reviewed the record as a whole and have given detailed consideration to the many objections of defendants to these several findings above referred to, together with the conclusions of law favorable to plaintiff flowing therefrom. We hold that such findings are supported by substantial evidence and are not clearly erroneous.

Defendants cite United States v. United States Gypsum Co., 1947, 333 U.S. 364, 369, 395, 68 S.Ct. 525, 92 L.Ed. 746 for the proposition that findings of fact are clearly erroneous, even when there is evidence to support them, when the reviewing court, on the entire record, is convinced that a mistake has been made. We find no such "mistake" here.

█  In assailing the validity of plaintiff's patent, regularly issued by the Patent Office, defendants have a heavy burden of proof. We start with the presumption of validity which attaches to the grant. "This presumption is not an idle gesture, * * * but is a positive factor which must be overcome by one who asserts invalidity." Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 1953, 208 F. 2d 1, 3. See also Radio Corporation of America v. Radio Engineering Laboratories, 1934, 293 U.S. 1, 7, 54 S.Ct. 752, 78 L.Ed. 1453; and University of Illinois Foundation v. Block Drug Co., 7 Cir., 241

F.2d 6, 10, 11. In the Block Drug case this court went on to say that " 'this presumption is strengthened in a case where * * * the prior art relied upon to invalidate the patent was considered and rejected by the patent office' ", quoting from Lewyt Corporation v. Health-Mor, Inc., 7 Cir., 1950, 181 F.2d 855, 857.

Defendants argue, however, that the prior patents of Zierer and Linke-Hofman were not cited to or considered by the Patent Office. There is little merit in this contention. Zierer appears in the affidavit of Charles S. Penfold filed in support of Anderson's petition to make special in the interference proceedings. It was also considered by the Examiner in rejecting certain claims during the interference along with Bignon, French Patent No. 820,156. The Examiner cited Bignon in the prosecution of the application and listed it as a reference at the end of the patent. This could very well indicate that the Examiner thought that Bignon was more pertinent than Zierer. After Anderson was awarded priority over the Trico application and Anderson resumed prosecution of other claims, plaintiff requested in writing that Linke-Hofman be made of record and went on to point out its disclosures and that it was considered by the applicant in revising his claims and in preparing new ones. This was followed by a written request for a certificate of correction to include Linke-Hofman in the "References Cited" at the end of the patent. This was ordered done. There was no evidence that the Patent Office Examiner was misled in this by plaintiff's counsel as defendants seem to contend.

█  Of course, even if these two patents had not been cited by the patent office as part of the prior art we could not assume that the patent office had not considered them. We have rejected similar contentions in the past. Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 1953, 208 F.2d 1, 4; Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 1949, 178 F.2d 794, 803; and Adler Sign Letter Co. v. Wagner Sign Service, 7 Cir., 1940, 112 F.2d 264, 267.

Defendants urge that no *single* patent in the prior art shows the combination of the claims in suit. They reason from this that both Judge Hoffman, in the instant case, and Judge Morgan, in the New York case, made the same mistake in appraising the prior art, *i. e.,* in "assuming that it is necessary to find a *complete anticipation* in a *single reference,* before declaring combination claims invalid." They contend that the trial court failed to make a finding or conclusion on the basic issue of patentable invention in that it "did *not* find as a fact, or conclude specifically, that it *was* a patentable invention to assemble the *old elements* in the manner set forth in the claims." We cannot accept this contention. It is without substance. Judge Hoffman found the Anderson combination was unique, that the prior art did not disclose the invention, and concluded that the patent was valid, *i. e.,* that it disclosed a patentable invention. The findings do not specifically mention a combination of Zierer and Linke-Hofman, or combinations of any of the other cited 19 patents. No testimony was offered relating to attempts to combine Zierer and Linke-Hofman, nor was there any showing of how such a combination could or might be made resulting in a device that would successfully clean a curved windshield.

■ Defendants urge that this case falls within the rule announced by the Supreme Court in Great A. & P. Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 151, 71 S.Ct. 127, 95 L.Ed. 162, and followed by this court in Pleatmaster, Inc. v. J. L. Golding Mfg. Co., 7 Cir., 1957, 240 F.2d 894, 899, that " '[t]he mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that heretofore performed or produced by them, is not patentable invention.' " [340 U.S. 147, 151, 71 S.Ct. 130] Defendants' reliance on these cases here is misplaced. They are clearly distinguishable on their facts. This is not a case where the result obtained was obvious, expected, old or merely an improvement over an old result. We agree with Judge Hoffman that "[t]he invention of the patent in suit includes elements some of which are new [and some old] in the art, and the claims are valid because the combination defined in them is new and non-obvious, and by that combination a new and unique mode of operation is provided resulting in an entirely new device." [165 F.Supp. 611, 623.]

■ This case falls within the rule announced by the late Judge Lindley, of this court, in Weller Manufacturing Company v. Wen Products, Inc., 7 Cir., 1956, 231 F.2d 795, 798, in which he said:

"Though the court may have believed that each of the elements in the patented device was old, it does not follow that the combination was unpatentable. We need not elaborate upon the rule that a novel combination of old elements which so cooperate with each other so as to produce a new and useful result or a substantial increase in efficiency, is patentable. See Lewyt Corp. v. Health-Mor, Inc., 7 Cir., 181 F.2d 855, certiorari denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605; Blaw Knox Co. v. Lain Co., 7 Cir., 230 F. 2d 373."

The late Chief Judge Parker, of the Fourth Circuit, in Colgate-Palmolive Company v. Carter Products, Inc., 4 Cir., 1956, 230 F.2d 855, 861, expressed the issue as follows: "The real question as to the validity of the patent is not one of anticipation or of prior use but of invention. The question is whether the product of the patent is a mere aggregation, in which old elements accomplish independently what they did in the prior art, or whether there is a true combination in which old elements have been combined to produce a new and useful result." In holding there that the latter was the case, Judge Parker cited United States Industrial Chemical Co. v. Theroz Co., 4 Cir., 25 F.2d 387, 391, which quoted at length with approval from 20 R.C.L. 1125–1126, in part as follows: "A combination is a composition of elements, some of which may be old and

others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposite instrument."

 We hold that the district court properly found and concluded the patent claims in issue to be valid.

Having held the claims in suit to be valid, under the issues as drawn in this appeal, it follows that the trial court must be sustained generally on the issue of infringement. Defendants have admitted in their brief that "to limit the issues, [defendants] took the not uncommon step of stating, in their opening, that the accused device *would infringe* the claims in suit if such claims were valid."

■ However, defendants contend that such an admission of infringement does not lend support to the trial court's conclusion of law No. 4 that "[d]efendants' infringement of the patent in suit has been *wilful and wanton.*" (Emphasis added.) It is clear to us that the concession on the part of defendants was conditioned on a prior determination of validity.

We find ourselves in much the same situation here as Judge Major phrased it in Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 1953, 208 F.2d 1, 5, in which he said: "While we have little, if any, difficulty in accepting the findings and conclusions of the District Court on the issue of validity and infringement, we think a more serious question is presented on the issue as to whether such infringement was wilful and wanton. On this issue, the burden was not upon the defendant Hoffman to prove exoneration but upon the plaintiffs to substantiate the charge. It has been held that a bona fide and reasonable belief that a patent was invalid removes the infringement from the class designated as wanton and wilful. Packwood v. Briggs & Stratton Corp., D.C., 99 F.Supp. 803, 808; Pennington Engineering Co. v. Houde Engineering Corp., D.C., 43 F.Supp. 698, 699, 707, affirmed, 2 Cir., 136 F.2d 210. See also Associated Plastics Companies v. Gits Molding Corp., 7 Cir., 182 F.2d 1000, 1006."

Based upon its conclusion that the infringement was wanton and wilful, the trial court entered a judgment that plaintiff recover its attorneys' fees. We do not believe the record justifies this conclusion or the entry of such a judgment, and we so hold.

The judgment of the district court is therefore modified by striking therefrom the award for attorneys' fees. As thus modified, the judgment is affirmed. Defendants will pay the costs of this appeal. It is so ordered.