BINKS MANUFACTURING COMPANY,
etc., Plaintiff-Appellant,

v.

RANSBURG ELECTRO-COATING COR-
PORATION, etc., Defendant-Appellee.

No. 12737.

United States Court of Appeals
Seventh Circuit.

July 27, 1960.

Charles F. Meroni, Otto R. Krause, Chicago, Ill., for plaintiff-appellant.

James P. Hume, Chicago, Ill., Elbert R. Gilliom, Harry T. Ice, Verne A. Trask, Indianapolis, Ind., for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Binks Manufacturing Company, plaintiff-appellant, prosecutes this appeal from a judgment of the District Court holding claims 1 to 6, 8, 10 and 11 of Starkey and Ransburg method patent No. 2,685,536 and Claim 4 of Starkey and Ransburg divisional apparatus patent No. 2,794,417 valid and infringed by use of the plaintiff's electrostatic spraying emitter. The judgment order enjoined plaintiff from further infringement,

granted damages, reasonable attorneys' fees and costs to defendant, and dismissed plaintiff's cross-counterclaim alleging anti-trust law violations by defendant. Ransburg Electro-Coating Corporation, defendant-appellee, is the assignee-owner of both patents.

The action originated in the District Court as a complaint for declaratory judgment which was dismissed as moot when the defendant patentee counterclaimed charging plaintiff with infringement. Plaintiff's answer raised the issues of validity and infringement and its cross-counterclaim charged anti-trust law violations, unfair competition and misuse of patents. Substituted pleadings retained the same issues. The cause was heard on the pleadings, stipulations, admissions, answers to interrogatories, depositions, exhibits and the testimony of witnesses for the defendant.

The parties will be referred to by their original designations as plaintiff and defendant. Defendant is the patentee asserting infringement. Plaintiff is defending against that charge and affirmatively asserting anti-trust law violations.

The patents in suit relate to a method and apparatus for electrostatically coating articles with liquid coating material, including paint. There are several methods by which many articles of manufacture may be painted, including dipping, roller-coating, flow-coating and spraying. Defendant (and the predecessor partnership composed of its owners) has developed two methods of electrostatic coating. A compressed-air electrostatic system is referred to as the No. 1 Process. The patents in suit relate to an airless electrostatic system referred to as the No. 2 Process. During the year 1957 the total cost of all paint, varnish and lacquer used industrially in the United States approximated 644 million dollars. Approximately one per cent was applied by defendant's No. 2 Process and 0.6% by defendant's No. 1 Process.

In the No. 1 Process the paint is sprayed by means of compressed-air spray guns into an electrostatic field which is maintained between wires or electrodes and the conveyorized articles of manufacture so that paint particles are electrostatically charged and urged toward deposition upon the articles by the effect of the field.

In the No. 2 Process, the airless system to which the patents involved relate, the electrostatic field is maintained directly between an atomizing device and the articles on the conveyor. The liquid coating or paint is fed at a controlled rate to and distributed along the extended edge of a stationary or a rotary atomizing head. The strength of the electrostatic field at the edge is such that the field is capable of electrostatically atomizing fine electrically charged particles from the liquid. The field disperses these particles in the form of a spray and deposits them upon the articles to be coated. Patent No. 2,685,536 is upon the method employed in such airless electrostatic coating or spray-painting and patent No. 2,794,417 is upon the apparatus employed therein. The method and device electrostatically effect atomization, dispersion and deposition in combination and under control.

The No. 1 Process reduced coating material losses due to over-spray but in many instances considerable loss persisted because the electrostatic field only partially counteracted the tendency of the compressed-air blast to carry the coating material elsewhere than to the articles to be coated or painted. The No. 2 Process eliminated the necessity of compressed-air spray guns to atomize the coating materials. In many applications it virtually eliminated over-spray, and thus paint loss or waste. It reduced labor costs for clean-up operations and substantially reduced the manufacturer's investment in spray booths, exhaust systems and related equipment.

The District Court made 94 detailed findings and 11 conclusions of law. The evidence included testimony of defendant's witnesses, including expert testimony. Consequently, insofar as the findings concern factual issues such as

the use made of prior art, and the nature of the improvement made over prior art, Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A. applies. The scope of our review is thus limited to a determination of whether such findings are "clearly erroneous". Armour & Co. v. Wilson & Co., Inc., 7 Cir., 274 F.2d 143, 156. If they find support in the evidence we are bound thereby.

The errors relied upon by plaintiff arise out of the District Court's findings and conclusions and its exclusion of certain evidence offered by plaintiff.

Plaintiff contends the patents are invalid for lack of invention over prior art; that the court's finding of commercial success was error because the stationary electrostatic atomizing heads shown and described in the patent were never commercialized; that the method claims in suit fail to set forth a patentable invention; that Claim 4 of the apparatus patent is invalid as constituting double patenting; that representations of commercial success made to the patent office were false and the patents procured were therefore a fraud on the public and unenforceable; and that Claim 4 of the apparatus patent is invalid because of public use.

Prior art relied upon by plaintiff includes a description of a procedure referred to as "spinning sealing wax" in an 1850 publication entitled "Electrical Experiments" by one Francis; an 1887 article by C. V. Boys describing an experiment characterized as "electrical spinning"; 1915 and 1917 articles by Professor John Zeleny concerning the effect of electrical current on surface points of liquids and the instability of electrified liquid surfaces; Littlefield patents Nos. 1,360,654 and 1,854,475; Darrah patent No. 1,958,406; Gravley patent No. 2,359,476 and Heis patent No. 1,475,995.

The Francis and Boys articles disclose nothing more than laboratory experiments demonstrating that an electrostatic field could form threads or fibers from molten wax or other viscous material. Zeleny disclosed laboratory demonstrations of the fact that an electrostatic field is capable of exerting atomizing action from liquid surfaces. These references disclose action due to electrostatic forces. They neither disclose nor suggest the combination of steps or elements which endows defendant's method and apparatus patents with novelty and which adds to the source of useful knowledge. The Littlefield patents, at most, disclose electrostatic atomization, and like the Darrah reference which, in addition, shows projection of the atomized liquid by electrostatic force, they contain no suggestion of a spray-receiving object to attract the particles. Nor was defendant's electrostatic de-tearing process described in the cited Gravley patent suggestive of either a method or a device to apply a coating. Gravley discloses the use of electrostatic force to remove an excess of coating. In that process an article coated, as by dipping, with an excess of liquid coating material is partially drained and then brought into association with an electrostatically charged grid. The "tears" of excess liquid at the bottom of the article are attracted to the grid by electrostatic force and leave the article. The Heis patent deals with a method and apparatus wherein gaseous substances are passed through an electrostatic field to promote chemical reaction. It suggests nothing useful in the field of the patents here challenged. That plaintiff's accused device uses an atomizing head similar to the conductive disks disclosed by Heis does not have the effect, as plaintiff seems to urge, of suggesting defendant's novel adaptation of electrostatic atomization, dispersion and deposition to the field of spray-coating or spray-painting. None of the prior art teaches nor suggests the combined atomization, dispersion and deposition of coating material through utilization of electrostatic force.

■■ Defendant's patents are combinations of old elements in a novel manner productive of new and useful results. The District Court was not in error in finding the defendant's method and ap-

paratus patents impregnable as against the cited references to prior art, nor in finding they constituted a broad and basic invention. The evidence substantially supports the District Court's factual findings and it applied the correct criteria of invention. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 325, 332, 29 S.Ct. 503, 53 L.Ed. 816; Lewyt Corp. v. Health-Mor, Inc., 7 Cir., 181 F.2d 855, certiorari denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162.

■ The District Court's finding of commercial success was not "clearly erroneous". It was well supported by the evidence. Such a finding is not of itself determinative of the issue of invention. It cannot lend validity to a patent where invention is plainly lacking. Goldman v. Bobins, 7 Cir., 245 F.2d 840, 844; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162. But, although not of itself decisive, commercial success is a factor which should not be ignored. University of Illinois Foundation v. Block Drug Co., 7 Cir., 241 F.2d 6, 11; Technical Tape Corp. v. Minnesota Mining & Manufacturing Co., 2 Cir., 247 F.2d 343, 348, certiorari denied 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529.

■ The specific atomizing heads shown in the specifications of defendant's method and apparatus patents utilize spaced needles, spaced orifices, or spaced wire wrappings. The liquid emerging from the interior of the head is thus mechanically divided into droplets from which the atomization takes place. The defendant's commercial atomizing device utilized a rotating bell or rotating disk through which the liquid coating is fed and at the edge of which atomization takes place at a plurality of closely spaced points. However, neither the claims of the method patent nor of the apparatus patent are limited to feeding the liquid through a plurality of orifices or points of separation obtained mecan-

ically or structurally. And the claims not the drawings define the invention. American Anode, Inc. v. Lee-Tex Rubber Products Corp., 7 Cir., 136 F.2d 581. The variance in structure employed in the commercial atomizing head is not indicative that the commercial success enjoyed is not attributable to the method and apparatus patent. The revolving bell or rotating disk feeding the paint to the atomizing zone by centrifugal force is fully embraced within the general concepts of the invention and constitutes a mere improvement in the mechanics of presenting the liquid to the zone of atomization.

And what has been said in this connection on the subject of commercial success also disposes of plaintiff's contentions that because of the difference between the atomization heads shown in the drawings and those utilized in defendant's commercial system a fraud was practiced on the Patent Office in the representations made with respect to commercial success and that the alleged fraud is indicative of defendant's purpose "to monopolize wrongfully the entire field of electrostatic coating on false affidavits."

■ We find no merit in plaintiff's contention that the method claims fail to satisfy the requirements of the patent statute (35 U.S.C.A. § 112) because they merely cite a desired result rather than the means for producing the same, and because of incompleteness due to failure to specify voltages, spacing, and liquids to which they are applicable. The process claims define the specific steps of procedure and the specifications being addressed to those skilled in the art (Highway Appliances Co. v. American Concrete Expansion Joint Co., 7 Cir., 93 F.2d 113) need not recite details. The pertinent portion of the statute provides:

"An element in a claim, for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall

be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

■ There is no requirement that quantitative values for such factors as voltage, spacing and liquid characteristics be recited. The fact that experimentation or the exercise of judgment is necessary to adapt a patented process to particular material or to obtain the particular results desired does not impair validity of the patent. Lever Bros. Co. v. Procter & Gamble Mfg. Co., 4 Cir., 139 F.2d 633, 638–639.

Nor does the fact that there are liquid coating materials which cannot be used in an airless electrostatic spray-coating system make defendant's claims broader than its invention. The invention is not overclaimed in being directed broadly to liquid coating materials. The liquids are the materials upon which the process acts—not the active agent. Plaintiff's reliance on Graver Tank & Manufacturing Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 is ill-placed. There the fluxes were claimed and included some inoperative to provide the desired feature. The method patent here involved does not purport to claim or extend to the liquid coating materials upon which it operates.

■ Plaintiff asserts that Claim 4 of the apparatus patent is invalid as constituting double patenting. Its argument is predicated upon the common disclosures of Claim 1 of the method patent and Claim 4 of the apparatus patent with respect to a plurality of points "spaced to form a substantially continuous extended atomizing zone" and being "sufficiently close together to permit the coating material to bridge the spaces therebetween" and defendant's witness Miller's testimony that "in order to form a continuous atomizing zone bridging is necessary so that you will get continuous and uniform feeding to the various atomizing points or sites." But it is entirely proper to cover the same disclosure by two patents co-pending, one for the

method and the other for the apparatus. General Tire & Rubber Co. v. Fisk Rubber Corp., 6 Cir., 104 F.2d 740, certiorari denied 308 U.S. 581, 60 S.Ct. 101, 84 L.Ed. 487. Nor do the patents in suit involve double patenting of the subject matter of Ransburg patent No. 2,658,009. The latter covers a different feature, the use of an additional electrode to "shape" a spray, and in any event has a filing date later than the patents in suit.

The amendment of Claim 4 in 1956, while the apparatus patent was pending, to include a reference to the "bridging" feature was not insertion of new matter in departure from the original applications in violation of 35 U.S.C.A. § 132. The "bridging" was inherent in what the original applications disclosed. The District Court's findings as to the bridging feature are supported by the record. There is evidence that the atomizing head utilizing spaced needles provided a series of gutters beween adjacent needles fed with liquid through openings present between the contacting needles, the plate and the wall of the device; that liquid or paint in the gutters would divide between the droplets formed at the tip of the needles and in so doing form a continuous web or film bridging the space.

Muncie Gear Works, Inc. v. Outboard Marine & Mfg. Co., 315 U.S. 759, 768, 62 S.Ct. 865, 86 L.Ed. 1171, cited by plaintiff, is not applicable. In the instant case the original application disclosed the basis for the amended claim and there is no evidence of public use more than one year before the invention was first presented to the Patent Office.

Prior to the submission of the amendment to Claim 4 plaintiff had sent a drawing of its accused device to the defendant in connection with negotiations concerning licensing. The District Court's finding that the amendment to Claim 4 was not the result of any disclosure of plaintiff's device, but was an earlier and independent development is supported by the evidence.

Plaintiff's accused method and apparatus employ a stationary electrostatic

emitter, the atomizing head of which has two coaxial concentric disks spaced about 0.007 inches apart, having a knife edge at each periphery, presented edgewise to the article. Liquid coating material or paint is supplied at a controlled rate near the center of the disks. It is formed into a film in the space between the disks and flows outward to the periphery. A spacer or shim between the disks confines the liquid film to a portion of the disk circumference. At the periphery of the disk the field draws the edge of the film into a series of closely spaced cusps and atomizes finely-divided electrically charged particles from the tips of the cusps. The field disperses the atomized particles and deposits them on the grounded article. No mechanical means is provided for spacing the cusps.

■ While in all the specific embodiments of the method and apparatus disclosed in the patents in suit the liquid emerges from the interior of the atomizing head through a plurality of orifices and is mechanically divided or concentrated into droplets from which the atomization takes place, the method claims are not limited to feeding the liquid through a plurality of orifices or to its concentration into droplets. Nor is Claim 4 of the apparatus patent limited to an atomizer which has a plurality of feed orifices or mechanical provisions for concentrating the liquid into droplets. The District Court's finding of infringement is supported by the testimony of defendant's expert witness concerning the features of the accused device as compared to the claims of the patents in suit. Plaintiff bases its case for non-infringement on the absence from its emitter of any physical or mechanical points. That argument fails because the claims in suit are not limited to a system including physical or mechanical points. Plaintiff's system employs the principle of the patents in suit, appropriates the substance of the invention as defined in the claims, does the same work in the same way, and accomplishes the same result. The slight change in form does not avoid infringement. The fact that there are structural differences between plaintiff's emitter and the heads specifically shown in the patents in suit is without significance in respect to infringement of the method patent. Infringement of a method patent is not dependent on the form of apparatus used. Cochrane v. Deener, 94 U.S. 780, 787–788, 24 L.Ed. 139. It is not material whether the means employed, the extended edge of the atomizer head, has physical points or is an uninterrupted edge.

On the patent branch of the case we conclude that the District Court's findings of fact are supported by the record, including expert testimony, and are not clearly erroneous. And, the District Court's conclusions of law with respect to validity and infringement are applications of correct legal criteria.

■ Plaintiff's cross-counterclaim alleged violation of Sections 1 and 2 of the Sherman Act (15 U.S.C.A. § 1 and § 2), and Section 3 of the Clayton Act (15 U.S.C.A. § 14). Plaintiff's contention that the District Court erred in the dismissal of its cross-counterclaim is predicated on charges that the District Court erroneously found and concluded that the defendant had not misused the patents in suit by reason of having combined licenses thereunder with leases of equipment and by not identifying the particular patents in the license agreements; that a cross-licensing agreement between defendant and another manufacturer was not for an unlawful purpose and its performance not a misuse of patents, nor in violation of the anti-trust law provisions, nor a damage to plaintiff; that a discontinued license-back provision in defendant's early license agreements did not constitute anti-trust law violation; and that patent procurement activities of the defendant did not violate the anti-trust law provisions.

On the record it had before it we cannot say there is clearly error in the District Court's finding and conclusion that plaintiff's domination of the airless electrostatic spraying system market is solely by virtue of the monopoly created by

its patents and has not been extended or enlarged beyond its proper scope. The evidence supports a conclusion that plaintiff failed to establish that defendant has engaged in any activity beyond the exercise of rights incident to its patent monopoly.

The record establishes that defendant does not sell equipment outright nor has it licensed anyone to make and sell electrostatic spray-coating systems. Although defendant offers license agreements containing a lease of equipment the leasing arrangement is not imposed as a condition of licensing and licenses are available without equipment being leased from the defendant. The combined license-lease arrangement was therefore not illegal nor a misuse of patents under the Clayton Act. Cf. Linde Air Products Co. v. Graver Tank & Mfg. Co., 7 Cir., 167 F.2d 531, 539. Although the record discloses that customers preferred the license-lease arrangement it is not indicated that such preference was due to defendant's insistence. Nor did the evidence concerning the difference in consideration paid require a finding that it was a compelling factor. That defendant furnished replacement parts without additional charge where the licensee leased equipment does not, on the facts here involved, evidence a Clayton Act or other anti-trust law violation. Cf. Stearns v. Tinker & Rasor, 9 Cir., 252 F.2d 589, 604. The monopoly of defendant's patents was not extended by the agreement to articles or supplies not covered by the patent.

The license agreement does not identify specific patents but grants a right to use an identified process for coating particular items in accordance with a system identified by a drawing. No licensee pays for or receives any license under a patent not applicable to the system. The licenses are terminable by the customer on thirty days notice. It does not appear that any attempt is made to extend a patent monopoly beyond the life of the patent, nor is the issuance of a license to use the system covered by the patents in suit conditioned on the acceptance of licenses under unwanted patents. No prohibited "package licensing" is involved. Apex Electrical Mfg. Co. v. Altorfer Bros. Co., 7 Cir., 238 F.2d 867, 871; Automatic Radio Mfg. Co., Inc. v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312.

Defendant's cross-licensing agreement with Behr-Manning does not purport to embrace the patents in suit and the evidence establishes no direct damage to plaintiff's business or property as a result thereof. Relief under plaintiff's cross-counterclaim cannot be predicated on the cross-licensing agreement. Blaski v. Inland Steel Co., 7 Cir., 271 F.2d 853, 854–855. It is unnecessary that we consider the specific findings made by the District Court as to its validity or effects otherwise.

Between 1951, when defendant began to market its No. 2 Process on a commercial scale, and 1955 the license agreement contained license-back provisions requiring that future inventions by the licensee pertaining to method and apparatus for electrostatic atomization of liquids or to coating with electrostatically atomized liquids be licensed to defendant royalty-free, on a nonexclusive basis, with the right to sub-license. The license-back provisions were eliminated from defendant's license forms in 1955. Defendant obtained no licenses from any of its licensees pursuant to the clause and the effect of the clause on the incentive of licensees to make improvements is purely conjectural. A license-back clause is not illegal *per se*. Transparent-Wrap Machine Corp. v. Stokes & Smith Co., 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563. Unlike the situations condemned in United States v. General Electric Co., D.C., 80 F.Supp. 989 and United States v. General Electric Co., D.C., 82 F.Supp. 753 there is no wide-spread network of such agreements between competing companies affecting an entire industry.

Plaintiff's contention that the representations made by defendant to the patent office in the procurement of the patents in suit were false has been

considered in connection with the arguments addressed to the question of commercial success. It is apparent that the representations did not evidence a purpose to "monopolize wrongfully the entire field of electrostatic coating on false affidavits" in violation of anti-trust law prohibitions as urged by plaintiff.

Plaintiff asserts error based on the District Court's ruling excluding from evidence, on defendant's objection, a certified copy of a consent judgment in an action brought by the United States against the Behr-Manning Corporation and certain other manufacturers charged with conspiring by means of patent agreements to monopolize commerce in coated abrasives. This consent decree did not find or adjudicate that the agreement between defendant and Behr-Manning was a violation of anti-trust law or otherwise unlawful, and neither that agreement nor the defendant was involved in any way in that action. It was an agreed judgment not in any way binding on defendant. The defendant was neither a party nor a privy to the action. There was no error in rejecting the proffered decree.

The other claimed error relating to exclusion of evidence concerns the District Court's ruling in sustaining defendant's objection to the admission of one answer in a deposition. The answer was a voluntary statement of the witness of a conclusion, and not being within the field of expert opinion by one qualified to testify in such field, was clearly not admissible. The ruling was not error.

The District Court's allowance of attorneys' fees to defendant is not predicated on any specific finding as to the basis for such an award. Allowance of such fees should find support in a specific finding as to the exceptional circumstances justifying the award. Apex Electrical Mfg. Co. v. Altorfer Bros. Co., 7 Cir., 238 F.2d 867, 874. From our review of the record we are of the opinion that the facts do not justify a conclusion that there is herein presented the "exceptional case" in which

attorney's fees are allowable under 35 U.S.C.A. § 285. Plaintiff has long been in the spray-painting equipment business. The controversy which preciptated the action appears to have been *bona fide*. See Anderson Co. v. Sears, Roebuck & Co., 7 Cir., 265 F.2d 755. Plaintiff's negotiation for a license and its reluctance to supply the accused device without an indemnification agreement from the prospective customer indicate only business prudence similar to that exercised by defendant in its original acquisition of certain patents and in obtaining the cross-licensing agreement with Behr-Manning. It was the defendant who converted the declaratory judgment proceeding into a patent infringement suit at a time when the whole basis of the infringement charge was a single unit built by plaintiff and used by it experimentally and for demonstration purposes, none having been sold by plaintiff. It is our conclusion that the District Court's allowance of attorneys' fees was, on the facts presented, an abuse of discretion.

Plaintiff filed a motion in this Court to vacate the District Court's judgment and remand the cause for consideration of newly discovered evidence in the form of two patents issued to defendant subsequent to the appeal to this Court. Plaintiff relies on the provisions of Rule 60 (b) of the Federal Rules of Civil Procedure (28 U.S.C.A.). The motion was taken with the case by order entered August 14, 1959.

When an appeal from a judgment is pending a motion under Rule 60 (b) for relief from the judgment because of newly discovered evidence should be filed in the district court and that court should proceed to hear the motion. If the district court indicates that it will allow the motion the court of appeals should then be requested to remand the cause. This procedure was followed in Zysset v. Popeil Bros., Inc., 7 Cir., 276 F.2d 354 where we remanded for consideration of alleged newly discovered evidence on the District Court's certification that there appeared to be sufficient

cause at law to warrant reopening of its judgment pursuant to Rule 60(b). See also Ferrell v. Trailmobile, Inc., 5 Cir., 223 F.2d 697, 698–699; Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349, 350 and 7 Moore's Federal Practice, 2d Ed. 336, Par. 60.30(2).

Apart from the fact that plaintiff's motion is not properly addressed to this court it is predicated upon arguments with respect to the scope of the claims in suit similar to those which we have found unsound in considering plaintiff's appeal. The subsequently issued patents cover the commercial form of the defendant's equipment. Their validity is not here in issue. They are at most improvements on the patents in suit. The evidence relied upon as newly discovered would not in our opinion have affected the judgment of the District Court.

The judgment of the District Court is affirmed in all respects except insofar as it allows attorneys' fees to defendant. It is reversed as to the allowance of attorneys' fees.

Affirmed in part and reversed in part.