## TURNER DOCK TRANSFER CO., Inc., v. TERMINAL ENGINEERING CO., Inc.

### No. 128.

Circuit Court of Appeals, Second Circuit.

Jan. 10, 1938.

Morgan, Finnegan & Durham, of New York City (John D. Morgan and Hobart N. Durham, both of New York City, of counsel), for appellant.

Moses & Nolte, of New York City, for defendant.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree, dismissing a bill in equity to enjoin infringement of Patent, No. 1,996,458, issued to Andrew J. Clancy. The district judge found that the invention had been anticipated by a prior use, and that the claims were invalid for that reason; we agree, and shall confine our discussion to that issue. The invention was of a crane, mounted on a motor car, an A-shaped boom being pivoted at either side of the chassis and held at a fixed angle to the horizontal by one tension, and one compression, member. The usual cable led from a drum at the rear of the motor over the top of the boom and ended in a hook to engage the end of the sling which holds the draught. At the apex of the boom was a "dished or flanged roller" or sheave, unusually wide, wide enough to receive the hook, especially designed for that purpose, and to allow hook and sling to be drawn over it and as much farther as to bring the draught close up to the apex. In this way it has become possible to raise draughts much higher than by those cranes in which the hook must stop at the top of the boom, and in which the full length of the sling must therefore intervene between it and the draught. The invention has proved of great service in stacking goods upon piers, and has resulted in much saving of labor. We shall assume that it was patentable over the printed art which went before it; we need discuss only one of the two uses which the judge found to have anticipated it.

Clancy filed his application on August 1, 1934, and in 1926 or 1927, the Otis Engine Company, a machine manufacturer, made and delivered several cranes which embodied a wide sheave at the apex of an A-shaped boom, mounted upon a motor; this sheave was intended to receive and pass along the hook at the end of the cable and so much of the sling as might be convenient. There can be no question that it was really what the defendant says it was, i. e. a complete anticipation; and the case resolves itself into the sufficiency of the evidence to prove its date. Presbry was the president of the Otis Company; so far as appears, he had no bias. He was shown a photograph of a crane which had an A-shaped boom, at the apex of which was a sheave or roller so wide as to leave no doubt that it was intended to receive the hook at the end of the cable. It is true that the swivel end of the arms was not fastened to the chassis of the motor, but to a column rising above its body; but the invention cannot depend upon that. Presbry identified this photograph as that of a crane he had built for Turner & Blanchard, stevedores, "probably in the fall of 1926"; and he described its use, which was precisely that of Clancy's. Next he identified the blueprint of a crane which bore date, March 24th, 1927; but as this

showed the boom only in profile, it was impossible to know whether the sheave was wide enough to accommodate the hook, though he erroneously said that it contained a wide sheave. A number of these cranes were sold; Presbry gave the names of several of the buyers and users; the account book of the company showed the sale of one to Turner & Blanchard as of February 2, 1927. He said that two sheaves were furnished with this crane, a wide one, such as the photograph showed, and a two part one, for use when the draught was so heavy that the cable had to be doubled. One, Sustman, was draughtsman for the Otis Company from 1926 to 1931; he made the drawing from which the blueprint was taken on the date which it bears, and he made it from the crane itself. The drawing was of the boom with a narrow sheave in place. There was, however, a wider sheave which could be put in its place, and which passed the hook over itself, and drew the draught up to the apex. Both narrow and wide sheaves were part of the standard equipment of the crane. He identified the photograph as one which he had himself taken at a Brooklyn pier towards the end of 1926. Blanchard was a partner in Turner & Blanchard; he too identified the photograph as that of a crane bought by the firm "around 1926 or 1927." The sheave was so wide that the hook would go over it, and apparently he did not know of any narrow sheave. The motor was not very satisfactory, for it used to upset and after six or seven months he gave it up. The plaintiff in rebuttal called its president, Turner, who had left Turner & Blanchard about June 1927, and had seen a crane which was like the Otis Company's, but which did not have a wide sheave, only a narrow one. He identified a second photograph as a picture of this, and attempted to point out a fall in two parts such as Sustman spoke of, but the print is too indistinct.

Thus, it does appear that the evidence is in dispute, and if that is final, the defendant has not proved its defence. It is *not* final; for, however exacting the burden upon a defendant in such cases, in the end the answer must depend upon the persuasive-ness of the evidence taken as a whole. There can of course be no doubt that an Otis crane with narrow sheave was in existence in March, 1927; the date on the blueprint was not forged, and all the witnesses agree so far. The issue is thus narrowed to whether the wide sheave was part of its equipment—standard equipment, as Sustman says. As to that we have the photograph which is conclusive, provided it went back of August 1, 1934, Clancy's filing date. It is quite true that there is no documentary confirmation as to when it was taken; Sustman could only rely upon his memory. But the incredulity which should think it possible that it was taken after August 1, 1934, would be very extreme. Presbry and Blanchard must be in fault as to their recollection, and Sustman must have deliberately perjured himself. He swore that at the time of trial, June, 1937, he was working in a public library, and that he had left the Otis Company "about 1931." We cannot suppose that he made the photograph after he left; if he did, it was no lapse of memory that made him say the opposite, but a deliberate fabrication; memory would not play him as false as that, and moreover, the cranes had been discarded by 1931. He had not the slightest motive to fabricate; it would be a gratuitous injustice so to impugn his word. He might indeed have taken the picture at any time while he was still with the company; but that will not serve; he could not have been uncertain as to when he left by three years; "about 1931" cannot include after August 1, 1934. We have indeed said that in proving a prior use it is nearly necessary to stand upon contemporary documentary evidence (Block v. Nathan Anklet Support Co., 2 Cir., 9 F.2d 311), but we have never gone so far as to require so much absolutely. Here the photograph is documentary evidence, and the only missing factor is its date; it appears to us that to question its existence before August 1, 1934, would be an excess of scepticism unjustified by any canon; more than is demanded even in criminal prosecutions. The argument that the crane was an unsuccessful and abandoned experiment needs no answer.

Decree affirmed.