OIL TRANSPORT CORP. v. AMBOY TOWBOATS, Inc., et al.
THE NO. 21.

No. 20, Docket 22044.

United States Court of Appeals
Second Circuit.

Argued Dec. 3, 1951.

Decided Jan. 2, 1952.

Pyne, Lynch & Smith, and Warner Pyne and Dudley C. Smith, all of New York City, for Amboy Towboats, Inc., respondent-appellant.

Burlingham, Veeder, Clark & Hupper, and Adrian J. O'Kane, all of New York City, for Oil Transfer Corp., libellant-appellee.

John W. Knox, New York City, for respondent-appellee, Socony-Vacuum Oil Co., Inc.

Before, SWAN, L. HAND and AUGUSTUS N. HAND, Circuit Judges.

**AUGUSTUS N. HAND, Circuit Judge.**

The Oil Transfer Corporation filed a libel which, for a first cause of action, named the Socony-Vacuum Oil Company, Inc., hereinafter called Socony, as respondent and sought recovery for damages to libellant's barge O.T. No. 21 alleged to have occurred while the barge was under charter to Socony. The second cause of action named Amboy Towboats, Inc., as respondent and alleged that the latter's tug, The St. Charles, negligently maneuvered the libellant's barge O.T. No. 21 into the south side of Pier 41 in Brooklyn so that the stern of the barge struck certain submerged rocks causing damage to the barge. During the course of the trial, Amboy Towboats, Inc., and Socony agreed that the former would be primarily liable and the latter secondarily liable if the libellant's second cause of action was sustained. The district court, after a trial, found that the damage to the barge was caused by the negligence of the tug, St. Charles, in allowing the barge to strike the submerged rocks and entered a final decree against the appellant, Amboy Towboats, Inc., for a stipulated amount.

On this appeal, the appellant attacks the district court's findings of fact as being unsupported by the evidence. The sole issue of fact is whether the stern of the barge O.T. No. 21 struck an underwater obstruction while being towed by the appellant's tug, The St. Charles. It is undisputed that on February 23, 1945 The St. Charles was towing the barge to Pier 41 in Brooklyn where she was to deliver a cargo of fuel oil to the S.S. Louisa M. Alcott; that in the process of maneuvering the barge stern-first into the slip alongside Pier 41, the bow of the barge brushed against the Alcott's propeller and that at about the same time the movement of the barge inshore suddenly stopped; that later the same day, while she was still discharging her cargo, her master made an inspection and discovered that she was leaking at her stern end; that prior to that time she had been in good condition; and finally, that at a point approximately 120 feet immediately south of Pier 41, the submerged rocks representing the remains of an old pier extended from the shore line. From these facts the inference might reasonably be drawn that the damage to the barge was caused by her striking the submerged rocks located to the south of Pier 41. This was especially true in the light of the district court's finding that owing to the width of the vessels there was only a margin of about 17 feet of water within which the barge could be maneuvered.

The appellant contends that there was no direct evidence of any collision of the barge with the rocks and that the facts do not permit the inference that was drawn by the district court. Thus, the appellant insists that the sudden stopping or "jolting" noted by the captain of the barge was due to the tug's having reversed its engines in order to check the movement of the barge inshore. While no one disputes that such an inference might be drawn yet, in the light of the other facts enumerated above, it would have been equally reasonable to infer that the barge's progress was stopped by striking the rocks. Moreover, support of the appellant's version would necessitate the ac-

ceptance of the testimony of its witnesses whose credibility was for the trial court to determine and as to which the person hearing the testimony was the best if not the sole judge. Likewise, the appellant suggests that since the barge sustained damages subsequent to February 23, 1945, perhaps the alleged damage did not occur during the towage in question. Possibly that might have been so, but the testimony of the bargemaster that she was in good condition immediately before the towage indicated that the damage occurred during the time the vessel was in tow by the St. Charles. The appellant appears to argue further that the burden was on the libellant to show that the barge did not strike the rocks after the towage was completed and while she was alongside the Louisa M. Alcott. But it was not necessary for the appellant to prove that its version of the accident was the only possible explanation of the damage; its burden was satisfied when it produced evidence from which the trial court could and did reasonably infer that the damage occurred in the manner alleged in the libel.

Finally, the appellant argues that the finding that the line of piles outlining the northerly side of the abandoned pier extended out from the shore to within 75 feet of Pier 41 was erroneous and that the correct distance was 175 feet. The appellant's calculation of the distance of the line of rocks from the pier appears to have been correct, but that distance is immaterial on the question whether it would have been physically possible for the barge to have struck the rocks and the propeller of the Alcott at about the same time, for the measurement does not take into account the intervening width of the Louisa M. Alcott which was moored alongside Pier 41 between it and the rocks. The critical distance was that measured along the diagonal between the stern of the Alcott and the farthest projection of the submerged rocks, which distance would appear to be something less than 175 feet.

We can find no material error in the trial court's findings of fact or in the conduct of the trial.

The decree is, therefore, affirmed.