**ARMOUR & COMPANY, a Corporation of Illinois**

v.

**The RATH PACKING COMPANY, a Corporation of Iowa.**

Civ. A. No. 51 C 549.

United States District Court
N. D. Illinois, E. D.

June 26, 1957.

Horace Dawson, Timothy L. Tilton, Chicago, Ill. (Carl C. Batz and Frank T. Barber, Chicago, Ill., of counsel), for plaintiff.

John R. Whitman, Pope & Ballard, Chicago, Ill. (Kenyon & Kenyon, Ralph L. Chappell, George T. Bean, Francis T. Carr and Hugh A. Chapin, New York City, of counsel), for defendant.

JULIUS J. HOFFMAN, District Judge.

This is an action for the alleged infringement of United States Patent No. 2,466,191 for Packaging Bacon and the Like, issued on April 5, 1949, to the plaintiff as assignee of Clarence K. Wiesman on an application filed September 3, 1947. It is undisputed that the court has jurisdiction of the subject matter of this action and that venue is properly laid in the Northern District of Illinois, Eastern Division.

The plaintiff, Armour & Company, is an Illinois corporation with its principal offices and a portion of its manufacturing facilities in Chicago. The defendant, The Rath Packing Company, is an Iowa corporation with a regular and established place of business in Chicago.

The suit was defended by the Standard Packaging Corporation, formerly known as the Standard Cap and Seal Corporation, hereinafter referred to as "Standard". Standard sold machines and bags to the defendant and other meat packers which were used in manufacturing packages like those charged to infringe.

To the complaint of the plaintiff the defendant filed an answer praying that the patent be held invalid, and denying infringement. The defendant also filed a counterclaim seeking to have the patent

declared to be invalid. The plaintiff answered the counterclaim denying all of its material allegations.

The patent in suit deals with "Packaging Bacon and the Like". The package described and claimed in the patent is a vacuum package for sliced shingled bacon having a transparent flexible pouch with "stiffening ribs" formed in the walls of the pouch where it hugs the overlapped bacon slices.

In describing the package the specification states:

"As shown more clearly in Fig. 2, the pouch wall has a vertical stepped portion 13 at each edge of the bacon slices, and this shoulder forms a lock against the bacon slice edge. Thus, the bacon slices are prevented from sliding relative to each other and, in addition, the offset portions 13 which extend across the entire length of the package, provide, in effect, vertical ribs which resist bending of the slices and result in a relatively rigid package, which can be handled very much like a board or rigid flat object."

Both claims in suit include "stiffening ribs" as elements thereof. Claim 2 specifies in addition that the ribs be "longitudinal," and claim 4 that they lock the slices against lateral displacement. The specific language employed in the claims is as follows:

Claim 2.

"the walls of the pouch fitting about the corners of the strips and forming longitudinal stiffening ribs for the package"

Claim 4.

"the walls of the pouch fitting closely about the corners of the slices to form stiffening ribs extending across the package and locking the slices against lateral displacement".

It is clear from the evidence that there was no significant commercial acceptance of the Wiesman package, and that it has not supplanted other packages. The evidence disclosed that in 1955 the sales of bacon in the Wiesman package constituted only 0.37% of the total sales of sliced bacon in the United States and only 3.3% of the plaintiff's total sales of sliced bacon. The evidence also revealed that although sliced bacon sales have steadily increased since 1944 from about 500,000,000 to about 900,000,000 pounds per year, the plaintiff's sales of bacon in the Wiesman package have declined from a peak of about 6,000,000 pounds in 1949 to about 3,500,000 pounds in 1955.

It is the court's view, from the prior patents on vacuum packages and from the emphasis placed on the package ribs in the Wiesman patent, that a pliofilm type of vacuum package of a rigid material or of a stacked or rectangular material was not patentable at the time the Wiesman patent was granted. No invention was required to make such packages or even to recognize specifically the added advantage of the rigidity of such packages.

The invention claimed in the patent in suit is for the discovery of an added advantage of combining

(a) a vacuum package made with a flexible material, such as pliofilm, with

(b) an edge-overlapping shingled material, such as shingled bacon.

Since neither the vacuum package nor the edge-overlapping arrangement are, taken separately, novel or patentable, it is necessary for the validity of the patent that the combination of (a) and (b) be a novel and useful conception. Utility is based on and attributed to the novel feature of the package, that is, the ribs resulting in the pliofilm from the atmospheric pressure forcing the film to follow the contour of the edge-overlapping packaged material. That the vacuum package is satisfactory is not enough. It is essential that the ribs on the package serve a purpose since it is these ribs which are the only result of the Wiesman conception.

The ribs can possibly make contributions to (a) the rigidity of the package or (b) the locking of the strips of bacon relative to one another.

### Effect of the Ribs on the Rigidity of the Package

That the stiffening of flexible material when subjected to vacuum packaging is not dependent on the presence of ribs was clearly brought out on the trial. The atmospheric pressure effectively laminates the bacon layers (under refrigeration) and the pliofilm layers. The rigidity of such a laminated structure was made clear by demonstrating the stresses set up when a package was supported across the middle and the ends were allowed to sag or were bent down. The upper layers were stretched or subjected to tension while the lower layers were subjected to compression.

The upper pliofilm layer resists stretching and, being held to the bacon, prevents the elongation of the upper layer which would be necessary for the simple bending of the package. The presence of the ribs had no appreciable effects and certainly no stiffening effect in this upper film. The evidence disclosed, however, that the package could bend without elongation of the upper layer if the material in the lower layers had no resistance to compression; that strength in both compression and tension is required to make the package rigid. The compressional rigidity is provided by the cold, compressed bacon and by the lower pliofilm layer (contrary to the analysis of the defendant's expert). The bacon makes the larger contribution. The pliofilm layer is, however, rigid under compression (because of its lack of elasticity) if it is prevented from buckling. Buckling is opposed by two effects

(a) the holding of the film firmly to the bacon by the atmospheric pressure;

(b) the presence of the ribs. Since the ribs are large compared to the thickness of the film, it is interesting to observe the stiffening exhibited by a folded piece of paper.

It is clear from the evidence that the resistance to buckling contributed by the ribs is not appreciable. The observation of the manner in which the lower pliofilm layer yields in, for example, the vacuum packed paper towel shows that buckling occurs over very localized areas and that the ribs would be ineffective in preventing this buckling.

Again, the rigidity observed in the flat packages—paper towel and strip of rubber—introduced by the defendant shows clearly that no appreciable stiffness is lost by elimination of these ribs.

When a package is bent across rather than lengthwise, rigidity is, unquestionably, decreased by the presence of the ribs. The upper layer of pliofilm not only stretches but straightens out and the lower layer folds in addition to being compressed. The ribs, therefore, provide additional means of relieving the stresses and will, if anything, decrease the rigidity.

### Locking of the Overlapping Layers

The claim is made in the patent that the ribs provide an advantage in their effect on the mutual lateral shifting of the bacon strips. (Claim 4) Wiesman, testifying for the plaintiff (R 202), said that the claimed invention, i.e., the stiffened package applies only to refrigerated bacon and that at room temperature the package is limp in spite of the vacuum and ribs. The witness Borchers (R 131) testified that the shifting of the bacon slices relative to one another was not a serious problem. The patent itself points out that "* * * the thin flat slices of bacon have great cohesive attraction for each other, * * *" and Wiesman testified (R 202, 203) that he attributes to the ribs no effect in keeping the slices of flexible bacon from shifting back and forth laterally on one another.

There is therefore nothing to indicate that lateral shifting of the slices might occur even without ribs. Even without a vacuum and without ribs lateral slipping would be negligible. The ribs therefore provide no useful purpose in this regard.

■ The Wiesman patent is invalid since the invention was in public use for more than one year prior to the date of the application—September 3, 1947. In the summer of 1944 Standard established a demonstration room at 674 Third

Avenue in New York City for the purpose of demonstrating vacuum packaging to potential customers (R 285). During 1944, bacon was vacuum packaged in shingled fashion in transparent pouches for The Hormel Company (R 290, D. Ex. 94), Goodyear Tire and Rubber Company (R 299), Wilson and Company and the Quartermaster Corps (R 298). (Also D.Ex. 90, p. 27). The transparent packaging material was observed to form "ribs" at the edges of the bacon slices, but the Standard Packaging Company did not claim that the ribs augmented the desirability of vacuum packaging.

There appear in the plaintiff's brief (pp. 14, 15 and 16) excerpts from "the clear and definite testimony of the defendant's own witness and former employee of Standard, Mr. Edward F. Lewin." Plaintiff's counsel argue that this testimony establishes the infringement of claims 2 and 4, and it may be assumed from this argument that the plaintiff accepts Lewin's testimony as reliable. This further testimony of Lewin is of interest:

"Q. When, with relation to the time you went to 674 Third Avenue, did you make vacuum packages consisting of thin, flat strips of flexible meat arranged in edge overlapping relation in a transparent, flexible pouch fitted about the corners of the strips and formed longitudinal stiffening ribs, the pouch being substantially free of air since it was evacuated? When did you do that with relation to the time you went to 674 Third Avenue?

"A. When the first few packages had been made, I had been at Third Avenue for approximately three or four months." (Lewin Deposition, p. 53)

Thus the plaintiff concedes that packages such as are described in claim 4 of the Wiesman patent were made by Lewin prior to September 3, 1946. Clearly, Standard publicly demonstrated the alleged invention and gave samples to several companies prior to September 3, 1946. This was a public use which bars the Wiesman patent. Egbert v. Lippmann, 1881, 104 U.S. 333, 26 L.Ed. 755; Paddies, Inc., v. Broadway Department Stores, Inc., D.C.S.D.Cal.1956, 147 F. Supp. 373.

The court concludes that it was inevitable and obvious that the package for which Wiesman obtained a patent would be developed. In 1945 and 1946, the availability of the transparent film, pliofilm, the widespread interest in vacuum packaging, and the general anticipation of self-service departments led to the investigation of packaging of meat products in transparent flexible vacuum bags by the major packing companies. Packaging of a particular type of meat product was not, in general, considered patentable. The packaging of bacon in a flexible transparent vacuum bag, in edge-overlapping fashion, would be expected to be part of such an investigation and would in no way depend on a new and novel conception. That such packages were made by Standard and others at about the same time and soon after the pliofilm was available further establishes that it was obvious to make the bacon packages in a manner in which Wiesman claimed to be an invention.

The court concludes further that the claims in suit are not infringed by the defendant's accused Canadian bacon package.

The court also concludes that the Wiesman patent in suit is invalid because the ribs do not perform the function described in the claims of the patent and because the invention was known or used by others in this country before the invention thereof by the applicant for patent.

The court further concludes that the Wiesman patent is invalid because, before Wiesman's alleged invention, the invention was made in this country by another who had not abandoned, suppressed or concealed it, and that the claims in suit do not involve patentable invention over the prior art and are invalid.

The court also concludes that the Wiesman patent in suit is invalid because the application of an idea, not original with the person who applies it, is not invention and Wiesman merely carried out the instructions of others in an obvious manner and without contributing any inventive act.

On the original complaint, judgment will be entered for the defendant on the merits. On the counterclaim, a judgment will be entered for the defendant (counterplaintiff) adjudging that Wiesman patent No. 2,466,191 is invalid. The defendant will also have judgment for costs.

The foregoing memorandum of decision contains the findings of fact and conclusions of law required under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.