ANDERSON COMPANY and Productive
Inventions, Inc., Plaintiffs-Appellants,

v.

TRICO PRODUCTS CORPORATION,
Defendant-Appellee.

No. 136, Docket 25183.

United States Court of Appeals
Second Circuit.

Argued Feb. 9, 1959.

Original Opinion Filed April 24, 1959.

On Motion for Rehearing, Opinion
Withdrawn and Case Decided
June 26, 1959.

James P. Hume, Chicago, Ill. (John
Rex Allen, James C. Wood and Lloyd W.
Mason, Chicago, Ill., David L. Landy,
Buffalo, N. Y., and Richard S. Melvin,
Gary, Ind., on the brief), for plaintiffs-
appellants.

Frank G. Raichle, Buffalo, N. Y. (Ed-
win T. Bean, Buffalo, N. Y., Casper W.
Ooms, Chicago, Ill., and Arnold Weiss,
Buffalo, N. Y., on the brief), for defend-
ant-appellee.

Before MADDEN, Judge, United States
Court of Claims,* and LUMBARD and
MOORE, Circuit Judges.

MADDEN, Judge.

This is an appeal from a judgment en-
tered March 25, 1958 in the District
Court for the Western District of New
York dismissing upon the merits plain-
tiffs' action for alleged infringement of
Anderson patent 2,596,063, and from an
order denying plaintiffs' motion for new
trial. The patent claims in suit define a
flexible wiper or cleaner construction
adapted to wipe or clean a curved sur-
face as well as a planar surface. The
application of curved windshields to ve-
hicles created cleaning problems appar-
ently solved by flexible wipers of the gen-
eral type illustrated in the Anderson pat-
ent.

The opinion of the District Court held
claims 6, 8, 15, and 17 of the Anderson
patent invalid because of prior knowledge
and prior public use of certain Zaiger
devices distributed to the trade in 1941,
about four years before the Anderson
patent application was filed. The cor-
rectness of the court's findings with re-
spect to prior public use is determinative
of this appeal.

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a).

Plaintiffs contend that prior use of the Zaiger windshield wiper was not proved beyond a reasonable doubt or by a preponderance of the evidence, and that said prior use was an abandoned experiment. Where a device such as the D-15 Zaiger device has been used or demonstrated on public streets and samples have been given to one or more companies for consideration and trial, such activities constitute public use. Armour & Company v. Rath Packing Company, D.C.Ill., 154 F. Supp. 54.

Judge Morgan's opinion recognizes that when viewed in certain respects the evidence raises doubts. However, the opinion indicates to us that the evidence was carefully considered, and that despite such doubts Judge Morgan found no basis for any reasonable doubt respecting the prior use of the Zaiger D-15 devices. It was specifically found that the evidence was sufficient to establish beyond any reasonable doubt the existence, use, and character of the Zaiger D-15 devices. Our examination of the record before us indicates adequate basis for such findings. The lack of documentary evidence to establish a firm date of public use of the D-15 devices is not critical, in view of the testimony received in this case. The fact that much of the testimony was by deposition is likewise not considered critical. We note that the court also considered evidence with respect to the authenticity of the Zaiger D-15 construction and found nothing which indicates with certainty how D-15 was made or that the devise was a spurious exhibit. We find ourselves unable to conclude that the findings on prior public use of the D-15 construction were either unsupported by evidence or clearly erroneous.

With respect to plaintiffs' contention that use of the Zaiger D-15 devices in 1941 was only an abandoned experiment, it may be noted that this country entered World War II that year and that commercial development of many new and useful devices was necessarily delayed for several years. An established successful public use is not negatived by delays in its commercial development.

The Anderson patent is invalid because the invention was in public use more than one year prior to the date of the application for patent. 35 U.S.C. § 102(b).

In view of our opinion that the finding of prior public use is supported by the evidence and is correct, it is unnecessary to consider other issues such as infringement of the Anderson patent claims by L-Bow and Rainbow blades. Since the Anderson patent claims are clearly invalid, we do not reach the infringement issue. Gentzel v. Manning, Maxwell & Moore, Inc., 2 Cir., 230 F.2d 341, certiorari denied 352 U.S. 840, 77 S.Ct. 63, 1 L.Ed.2d 57.

With respect to the order denying plaintiffs' motion for new trial, we note that the power to inspect and make copies of the abandoned Zaiger and Nesson patent application was filed in the United States Patent Office August 22, 1957, and approved. Plaintiffs apparently obtained a certified copy of said application in September 1957 and concluded in October 1957 that it was not the type of evidence justifying reopening the present case. Plaintiffs' motion for new trial was not filed until February 5, 1958, a date after the decision unfavorable to plaintiffs but before actual entry of judgment dismissing plaintiffs' suit. We note that the District Court in its opinion denying plaintiffs' motion for new trial, indicates that it carefully considered the new matter and concluded that the matter presented does not change the result reached on invalidity of the Anderson patent. We have considered plaintiffs' motion, together with the affidavits and exhibits in support and in opposition, and find no reason to conclude that the District Court failed to act properly and within its discretion in denying plaintiffs' motion for a new trial.

The appellants have called our attention to litigation in another circuit on the Anderson patent here in suit in the case of Anderson Company v. Sears Roebuck & Co., D.C., 165 F.Supp. 611, in the Northern District of Illinois, Eastern Division, commenced after this suit, and

to the decision of Judge Hoffman, affirmed by the Seventh Circuit on April 14, 1959, 265 F.2d 755. We are unable to conclude that Judge Morgan's findings of fact are or must be in error simply because Judge Hoffman reached a different result on apparently different evidence.

Furthermore, Judge Hoffman's very brief opinion of June 18, 1958 states only the conclusions that alleged prior use has not been established and that D-15 was a spurious exhibit; it gives no analysis or reasons for the conclusions. It does not even refer to Judge Morgan's thorough and reasoned opinion of January 17, 1958, reported at 162 F.Supp. 224, which was available to Judge Hoffman prior to his own decision. Only the findings of fact and the conclusions of law signed by Judge Hoffman and prepared for him by counsel at his request are reported at 165 F.Supp. 611.[1]

We did note and give weight to two opinions of the California federal court in earlier litigation which involved the same patent before us in Georgia-Pacific Corporation v. United States Plywood Corporation, 2 Cir., 1958, 258 F.2d 124, but in the California case the decision was final, and the case had finished its course before the Georgia-Pacific case was commenced in the Second Circuit. Moreover, the District Court for the Southern District of New York had discussed the California opinions in its own opinion.

Judgment affirmed.

On Motion for Rehearing

Before MADDEN, Judge, United States Court of Claims,* LUMBARD and MOORE, Circuit Judges.

MADDEN, Judge.

Following our opinion of April 24, 1959, the plaintiffs-appellants filed petition for rehearing. Thereafter upon our invitation, defendant-appellee filed a brief in opposition, and appellants have filed a reply brief. Upon further consideration we withdraw our opinion of April 24, 1959, reverse the judgment below and remand the case for a new trial.

The District Court held claims 6, 8, 15, and 17 of the Anderson patent invalid because of prior knowledge and prior public use of certain Zaiger devices distributed to the trade in 1941, about four years before the Anderson patent application was filed. The appellants contend that the evidence of prior public use was inadequate to justify the Court's finding that such public use had occurred. They remind us of numerous judicial admonitions of the danger of permitting a regularly granted patent, carrying a strong presumption of validity, to be nullified by a purported showing that another person had, prior to the time of the patent, made and publicly used the patented device.

The Supreme Court of the United States, in The Barbed Wire Patent Case, Washburn & Moen Mfg. Co. v. Beat Em All Barbed Wire Co., 143 U.S. 275, 284–285, 12 S.Ct. 443, 447, 36 L.Ed. 154, said:

"We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the

---

1. The Court of Appeals for the Seventh Circuit did not pass on the issue of prior public use and its opinion of April 14, 1959 (265 F.2d at page 757), expressly states that the defendant appellants waived this issue on appeal.

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a).

eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny. Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer. The doctrine was laid down by this court in Coffin v. Ogden, 18 Wall. 120, 124 [21 L.Ed. 821], that 'the burden of proof rests upon him, (the defendant,) and every reasonable doubt should be resolved against him. If the thing were embryonic or inchoate; if it rested in speculation or experiment; if the process pursued for its development had failed to reach the point of consummation, it cannot avail to defeat a patent founded upon a discovery or invention which was completed, while in the other case there was only progress, however near that progress may have approximated to the end in view.' "

In Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 60, 43 S.Ct. 322, 327, 67 L.Ed. 523, the Court stated the rule to be that such evidence "must be clear and satisfactory."

▮ The appellants urge that oral testimony is *per se* insufficient for the purpose here in question, unless it is corroborated by documentary evidence. Although it is true that in practically all the cases in which prior public use has been held to invalidate a patent, there has been documentary evidence to corroborate oral testimony, we think there is no absolute requirement of such evidence. In Turner Dock Transfer v. Terminal Engineering Co., 2 Cir., 94 F.2d 79, 80, Judge Learned Hand wrote:

> " * * * however exacting the burden upon a defendant in such cases, in the end the answer must depend upon the persuasiveness of the evidence taken as a whole."

See also Cowles Co. v. Frost-White Paper Mills, 2 Cir., 174 F.2d 868, 871.

In the instant case the evidence of prior public use was entirely in the form of depositions rather than oral testimony given in the presence of the Court. It was substantially as follows. Max Zaiger was the president of a manufacturing company which manufactures windshield wipers. That company, and the parties to this litigation, make practically all the windshield wipers manufactured in this country. Zaiger, and his then employee, Nesson, testified that in 1941, which was three years before Anderson's invention, Nesson made some four dozen windshield wipers, of which one, Exhibit D–15, was the only surviving example. Exhibit D–15, as it appears in evidence, embodies the idea contained in the appellants' patent. Nesson testified in great detail as to how he had manufactured the four dozen devices in 1941, had tested several of them on a curved glass windshield furnished by the Studebaker Company, and had then turned the devices over to Zaiger, except that he had put one of them on his brother's car. Zaiger testified that he and a salesman, Mr. Mixom, since deceased, had taken a number of the devices to Detroit and delivered some of them to the Stewart Warner Company which was supplying the Packard Company with windshield wiper motors and desired a satisfactory wiper blade to go with the motors; had delivered others to Mr. Beltz, chief electrical engineer of Packard, and had taken others to South Bend, Indiana, and delivered them to the Studebaker Company. He testified that

he had put one of the devices in a cabinet in his office, and that one was Exhibit D–15. Zaiger testified that upon his return home he put two of the blades on his own car for testing. He did not attempt to patent the device, because he understood that the law was that a new combination of old elements was not patentable.

Mr. Berg, for many years Sales Manager for Stewart Warner, testified that Zaiger and Mixom called on him at his office in Detroit in May or June of 1941 and gave him two sets of blades which were identical with D–15. He placed one of the sets on his Packard car and used them for some six months. Mr. Whitted, an engineer for Stewart Warner, testified that he had no recollection of having tested a wiper blade like D–15. He said he had seen a blade on Berg's car which had spaced pressure points, but it had a rigid back, and he had told Berg that there was no point in having spaced pressure points on a blade that had a rigid back.

Beltz testified that in the spring of 1941 Zaiger and Mixom gave him some blades like D–15 and later sent him some more; that the blades were tested in the Packard experimental garage on flat glass and proved satisfactory.

Mrs. Lipkus, who was Zaiger's secretary from 1933 to 1952, testified that Nesson made the several dozen blades in 1941; that she saw them being tested at the plant and saw a set on Zaiger's car; that the blade in evidence, D–15, was kept in a locked cabinet of Mr. Zaiger, where he kept experimental blades. She testified that Zaiger made a trip to Detroit in 1941 before April 15.

Mr. Wood testified that he had been, in 1941, an attendant at a garage where Zaiger had his car serviced; that he had seen a blade like D–15 on Zaiger's car and remembered it because he had once lifted it up from the windshield.

All the cars on which the asserted testing of the D–15 devices occurred had flat windshields. Zaiger testified that his company had made, at about the time in question, some 2,000 of another wiper blade, of which D–10 was the only surviving example. It, like D–15, had a triple yoke mounting, but it had a rigid back.

Correspondence between Zaiger and Studebaker, at about the time in question, was introduced, but it showed only that Zaiger was hopeful of developing a satisfactory wiper for a curved windshield.

Because of the rearmament and the war, no automobile company adopted a curved glass windshield until the end of the war.

The plaintiff introduced expert testimony tending to show that D–15 could not have been made as Nesson had testified that he had made it and the many other identical devices in 1941. This testimony was contradicted by expert testimony on behalf of the defendant. Nesson was not called by the defendant to reaffirm, in person, the truth of the testimony given on his deposition. Judge Morgan was left completely uncertain as to whether D–15 was a genuine surviving example of some four dozen similar devices made in 1941. If it was not that, it must have been a spurious exhibit manufactured for the purposes of this litigation. Judge Morgan's uncertainty, then, would also have been an uncertainty as to the veracity of Nesson and Zaiger, and of their testimony as to the public use which they said they had made of a wiper blade like D–15.

In that condition of the record, the evidence of prior public use of a device like D–15 consists only of the oral testimony of Berg, contradicted by Whitted, and the oral testimony of Beltz, the Packard engineer and Wood, the service garage employee. When it is remembered that the uses of the supposed D–15 type wipers which these witnesses made, or observed, were on flat glass windshields, on which the flexible back would not be important, it is quite possible that they were observing wipers with three pressure points, but with rigid backs.

We agree with Judge Morgan that the genuineness of D–15 has not been proved. The consequence of that uncertainty is that the evidence of prior public use consists only of oral testimony, and that testimony is by no means abundant. We do not regard this proof as clear and satisfactory especially in view of contrary conclusions on this question in the Seventh Circuit.

The plaintiff, subsequent to bringing this action, sued Zaiger's company and Sears Roebuck and Co. in the United States District Court for the Northern District of Illinois, for infringement of the patent involved in the instant suit. The suit was defended on several grounds, one of which was the same alleged prior public use asserted in our instant case. A large portion of the voluminous record in that case was devoted to evidence on that issue. At the trial before Judge Hoffman some of the witnesses on the issue of prior public use, and particularly Max Zaiger himself, appeared and testified in person.

The Illinois District Court made a finding that D–15 was a spurious exhibit. Anderson Co. v. Sears Roebuck & Co. (Zaiger Corp.), D.C., 165 F.Supp. 611, 617. The Court held on July 3, 1958, that the Anderson patent was valid, and rejected all of the defenses, including the defense of prior public use, and held the Anderson patent was infringed. The defendants appealed from this decision to the United States Court of Appeals for the Seventh Circuit. They limited their appeal to the single question of whether or not the patent in suit was invalid under 35 U.S.C. § 103 because of lack of invention over the disclosures in the prior art, and particularly over the disclosures of two of the several patents set out in their answer. They thus abandoned the defense of prior public use which, as we have seen, was the sole ground upon which the District Court in our instant case held the Anderson patent invalid. The Court of Appeals affirmed the judgment of the District Court. Anderson Company v. Sears Roebuck & Co. (Zaiger Corporation), 7 Cir., 265 F.2d 755.

Upon the whole record and in view of the opinion of the District Court for the Northern District of Illinois and the proceedings in the Court of Appeals for the Seventh Circuit, we are of the opinion that there is such serious doubt concerning the conclusion of the District Court on the issue of prior public use that the interests of justice require a new trial of this case. We therefore reverse the judgment and remand the case to the District Court for a new trial.

Reversed and remanded.