The ANDERSON COMPANY and Productive Inventions, Inc., Plaintiffs,

v.

TRICO PRODUCTS CORPORATION, Defendant.

Civ. No. 5677.

United States District Court
W. D. New York.

Dec. 31, 1964.

---

1. Hogue v. United States (5 Cir.) 287 F.2d 99; and Norris v. United States (5 Cir.) 190 F.2d 186.

Moot, Sprague, Marcy, Landy & Fernbach, Buffalo, N. Y., Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill. (David L. Landy, Buffalo, N. Y., John R. Allen, James C. Wood, Lloyd W. Mason, Chicago Ill., of counsel), for plaintiffs.

Raichle, Moore, Banning & Weiss, Buffalo, N. Y., Bean, Brooks, Buckley & Bean, Buffalo, N. Y. (Frank G. Raichle, Buffalo, N. Y., Edward A. Haight, Chicago, Ill., Edwin T. Bean, Arnold Weiss, Buffalo, N. Y., of counsel), for defendant.

HENDERSON, District Judge.

Plaintiffs, The Anderson Company ("Anco") and Productive Inventions, Inc. ("Productive"), are Indiana corporations with a principal place of business in Gary, Indiana. Defendant, Trico Products Corporation ("Trico"), is a New York corporation doing business in Buffalo, New York.

The jurisdiction of this court is based upon the fact that this is a suit in equity arising under the patent laws of the United States. Jurisdiction over the parties is admitted or waived.

The controversy between the parties arises out of plaintiffs' assertion that defendant has infringed claims 6, 8, 15 and 17 of United States Patent No. 2,596,063 on a "Windshield Wiper Blade Linkage Assembly." Such patent was applied for December 13, 1945 and issued on May 6, 1952 to John W. Anderson ("Anderson"). On issuance the patent was assigned to Productive which corporation was wholly owned by Anderson. Productive granted an exclusive license under the patent to Anco, also substantially wholly owned by Anderson. During the pendency of these proceedings Productive was merged into Anco which is now the sole owner of Patent No. 2,596,063 and all rights thereunder.

This is a retrial of an action instituted in 1953. The case was originally set down for trial before Judge John Knight but, following his decease, was eventually tried in 1956 before the late Judge Justin C. Morgan. On January 17, 1958, Judge Morgan held the patent invalid by reason of the prior public use and offer for sale in 1941 by The Zaiger Corporation (then known as Lion) of an anticipatory wiper blade identified in these proceedings as Exhibit D–15 (162 F. Supp. 224). That decision was initially affirmed by the Court of Appeals for the Second Circuit on April 24, 1959 (267 F. 2d 700).

The patent in suit has also been the subject of litigation in the United States District Court for the Northern District of Illinois in a suit entitled The Anderson Company v. Sears Roebuck & Co. and The Zaiger Corporation, Civil Action 56 C 463 ("the Chicago case"). There the Trial Court rejected the Zaiger blade prior use defense and found the patent valid over the prior art (165 F. Supp. 611). The Court of Appeals for

the Seventh Circuit affirmed on April 14, 1959 (265 F.2d 755).

On June 26, 1959, the Court of Appeals for the Second Circuit, acting on plaintiffs' petition for rehearing, and making reference to the contrary decision in the Chicago case on the issue of the Zaiger blade prior use, withdrew its earlier opinion, reversed the judgment below, and remanded the case to this court for a new trial (Anderson Co. v. Trico Products Corp., 267 F.2d 700, 702).

The issues on this retrial arise out of plaintiffs' contentions that the patent in suit is valid, infringed and enforcible, and defendant's opposing contentions that the patent (1) is unenforcible because misused by plaintiffs, (2) is invalid because the specification failed to set forth the "best mode" contemplated by the inventor, at the time the application was filed, of carrying out his invention, as required under statutes in effect both then and now, (3) is invalid in view of the prior public use and offer for sale of the Zaiger D–15 blade, and moreover is unenforcible because of Anderson's efforts to suppress evidence of such prior public use and his false testimony concerning certain of such efforts, (4) embodies no invention, irrespective of the D–15 blade, (5) has not been infringed, (6) is unenforcible because of Anderson's unclean hands in misrepresenting the date and other circumstances of the alleged invention, and (7) is invalid because if there was any invention it was made by one Krohm who did not apply or join in the application for the patent.

No issue was ruled upon at the first trial except the prior public use issue. The "misuse" and "best mode" defenses were not in issue at that trial. At the trial of the Chicago case only the defenses of prior public use and invalidity over the prior art were in issue. Only the latter issue was there argued on appeal.

## THE DEFENSE OF MISUSE

"A patent operates to create and grant to the patentee an exclusive right to make, use and vend the particular device described and claimed in the patent. But a patent affords no immunity for a monopoly not within the grant. [cases cited], and the use of it to suppress competition in the sale of an unpatented article may deprive the patentee of the aid of a court of equity to restrain an alleged infringement by one who is a competitor." [1]

To establish the defense of misuse the defendant relies upon a contract entered into by Anco and Chrysler Corporation and the plaintiffs' subsequent conduct in enforcing that agreement.

Entered into on August 3, 1950, the agreement took the form of a patent claim release and requirements contract. This form, apparently sought by Chrysler, aptly has been characterized as a "left-handed license." Clearly anticipating the windshield wiper blade for the curved windshield, Anco succeeded in having the agreement prefaced as follows:

"In consideration of your standardizing on our design of connections of arm-and-blade and arm-and-motor-pivot-shaft for windshield wipers * * *."

In the future Anco was to require "standardization" under threat of cancellation of the agreement. Anderson characterized the provision as "a pivotal consideration" for the agreement.

The defendant claims that the provision, calling for standardization of wiper arm connections on Anco's design, was intended to and did suppress competition with Anco's wiper arms.

In deciding the issue of misuse the court is guided by the inquiry of the United States Supreme Court in Morton

---

1. Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 491, 62 S.Ct. 402, 404, 86 L.Ed. 363 (1942).

Salt Co. v. Suppiger Co., 314 U.S. 488, 490, 62 S.Ct. 402, 404 (1942):

"The question we must decide is not necessarily whether respondent has violated the Clayton Act, but whether a court of equity will lend its aid to protect the patent monopoly when respondent is using it as the effective means of restraining competition with its sale of an unpatented article."

Of particular aid in this case is the Supreme Court's further observation in United States v. Univis Lens Co., 316 U.S. 241, 251, 62 S.Ct. 1088, 1094, 86 L.Ed. 1408 (1942):

ꝑ "In construing and applying the patent law so as to give effect to the public policy which limits the granted monopoly strictly to the terms of the statutory grant, Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488 [62 S.Ct. 402, 86 L.Ed. 363], the particular form or method by which the monopoly is sought to be extended is immaterial."

The plaintiffs argue that the fact that Chrysler could buy arms bearing the standardized connections from any source, precludes a finding of misuse. In quite different circumstances this might be true. They also point to the advantages of standardization and claim that such benevolent considerations motivated their actions. However, having observed the witnesses and having recalled in particular Anderson's inconsistent statements, lapses of memory and general testimony with respect to his dealings with Zaiger, particularly by telephone, the court has decided that the circumstances surrounding the inclusion of the clause provide a more accurate rule and guide to the plaintiffs' purposes.

To understand the significance of the standardization clause to Anco, some understanding of then existing competitive conditions is necessary. Prior to and at the time of the agreement in question, Trico, through use of its patent monopolies, dominated the original equipment market for windshield wiper motors, arms, blades and connecting means. However, with the decision of the Board of Patent Examiners on May 16, 1950, the issuance of the patent in suit became probable, and Anco's future prospects in the original equipment blade market immediately brightened.

Because of its contribution to automobile design, automobile manufacturers appear to have been anxious to incorporate the curved windshield into their future automobile lines. It then appeared that control of wiper blades which could successfully wipe such windshields would lodge in Anco. Anderson promptly circulated the decision of the Board of Patent Examiners among the automobile manufacturers.

Due, undoubtedly, to its prospective patent, Anco was soon to reach an agreement with Chrysler. In negotiating with Chrysler, however, Anco was not content with just its prospects in the original equipment wiper blade market. Because, as Anderson phrased it, "we wanted to sell arms too," the controversial standardization clause was inserted.

As heretofore mentioned, Anco's wiper arm competition in the original equipment market took the form of the goliath Trico. Trico had developed, patented, and was producing a motor-shaft-arm connecting means referred to as the "drumhead." There is every reason to believe that Trico was able to price its arm substantially below Anco's arm. Cleaner in appearance, offering a greater variety of settings of blade to windshield frame, and snap-on installation, the arm employing the drumhead connecting means would appear likely to recommend itself to a buyer. Chrysler's interest in this arm in the face of its contract with Anco and Anco pressure lends additional support to this conclusion.

Anco's arm, with its spline shaft connecting means, lacked the features of the drumhead. In addition, Anderson testified that Anco, on its volume of business, then could not absorb the cost of installing and operating die casting equipment necessary for the manufacture of a comparable connecting means. The record clearly demonstrates that Anderson did believe and was justified in believing Tri-

**838**

co's arm to be a serious threat to the successful sale of the Anco arm.

The plaintiffs obviously could not tie the purchase of blades directly to the purchase of Anco arms. However, under existing competitive conditions, a comparable or at least an eminently satisfactory result was to be expected if all wiper arms employing different connecting means, and particularly Trico's patented drumhead, could be eliminated from competition. The court concludes that the standardization clause in fact was the vehicle for the accomplishment of that very end. Valid business considerations, which might underlie the manufacture of a blade with a standardized connecting means, obviously would not extend to the standardization of the motor-shaft-arm connecting means. Certainly not to Chrysler's advantage, the latter requirement was added by Anco to avoid competition with Trico. In this endeavor it appears that Anco was successful.

Some time after this case originally was submitted for decision, by stipulation, the plaintiffs reopened and put in proof to the effect that Chrysler will use Trico arms and connections on many of its 1965 models. However, as long as the inchoate threat exists under its agreement with Chrysler, the fact that Anco presently elects to pursue a different course does not call for a different result. See F. C. Russell Co. v. Consumers Insulation Co., 226 F.2d 373, 376 (3d Cir. 1955) and Berlenbach v. Anderson & Thompson Ski Co., 329 F.2d 782, 784–785 (9th Cir.1964).

The court's view is not altered by the plaintiffs' attack on the defendant's business practices. While the plaintiffs may or may not have been provoked, the decision as to whether relief should be withheld must depend on the plaintiffs' and not the defendant's conduct. Required standards must be reasonably certain and may not be varied on the basis of degrees of inequitable conduct as between the parties. Cf. Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).

In summary, the court finds the standardization clause to be a subterfuge, its purpose being to assure Anco of a market for its wiper arm relatively free from competition. In the first instance, by use of its prospective patent power, Anco misused the patent by exacting the standardization clause from Chrysler; thereafter, and until recent date, Anco continued to misuse its patent by enforcing that clause under threat of cancellation; and presently, with the inchoate threat posed by that clause, Anco continues to misuse its patent. Finding the plaintiffs, by reason of misuse, to be disqualified from maintaining this suit, the plaintiffs' complaint is dismissed.

So ordered.